[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-15035
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 3, 2011
JOHN LEY
CLERK

D. C. Docket No. 09-00111-CR-ORL-19DAB

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WALLACE ALLEN,
KAVON GRAVES,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(March 3, 2011)

Before TJOFLAT, CARNES and ANDERSON, Circuit Judges.

PER CURIAM:

Kavon Graves appeals his conviction and 240-month sentence for forcibly assaulting a correctional officer engaged in the performance of his official duties with a deadly weapon or causing bodily injury, in violation of 18 U.S.C. § 111(a)(1) and (b). Wallace Allen appeals his convictions for forcibly assaulting a correctional officer engaged in the performance of his official duties and inflicting bodily injury, in violation of 18 U.S.C. § 111(a)(1) and (b).

Graves raises several arguments on appeal, namely, that (1) the government failed to produce material required under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), related to cigarette smuggling at Coleman Federal Penitentiary ("Coleman"); (2) the district court should have reviewed the contraband-smuggling materials he requested *in camera* to determine whether any exculpatory or impeachment evidence that should have been disclosed to him existed; (3) the court abused its discretion in excluding expert testimony regarding contraband smuggling at Coleman; (4) the court improperly allowed the government to engage in "burden shifting" in its closing argument; (5) the court violated the Fifth and Sixth Amendments by calculating his base offense level using U.S.S.G. § 2A2.2, which corresponds with aggravated assault on a federal officer, instead of under U.S.S.G. § 2A2.4, the guideline for obstructing or impeding an officer, based on facts not proved to the jury beyond a reasonable

2

doubt; (6) the court erroneously determined that he was a career offender by relying on a predicate offense that occurred when Graves was only seventeen years old; and (7) by considering a juvenile conviction in determining his career-offender status, the court violated his Fifth and Eighth Amendment rights. Both Graves and Allen argue on appeal that (8) the district court erred in excluding Graves's confession to an FBI agent, and Allen asserts further that the exclusion of Graves's statements violated his rights to due process and a fair trial.

I.

We review allegations of a *Brady* violation *de novo*. *United States v. Jones*, 601 F.3d 1247, 1266 (11th Cir. 2010). Under *Brady*, "the prosecution is required to disclose to the defense evidence favorable to the accused if the evidence is material to guilt or punishment." *United States v. Starrett*, 55 F.3d 1525, 1555 (11th Cir. 1995) (per curiam). To obtain a new trial based on a *Brady* violation,

> the defendant must show that (1) the government possessed favorable evidence to the defendant; (2) the defendant does not possess the evidence and could not obtain the evidence with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to the defendant, there is a reasonable probability that the outcome would have been different.

*United States v. Vallejo*, 297 F.3d 1154, 1164 (11th Cir. 2002). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383, 87 L. Ed. 2d

3

481 (1985). "The question is not whether the defendant would more likely than not have received a different verdict with the [concealed] evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S. Ct. 1555, 1566, 131 L. Ed. 2d 490 (1995). The defendant does not have to demonstrate by a preponderance that disclosure of the suppressed evidence would have resulted in an acquittal. *Id.* at 434, 115 S. Ct. at 1566.

The "*Brady* rule is not an evidentiary rule that grants broad discovery powers to a defendant." *United States v. Quinn*, 123 F.3d 1415, 1421–22 (11th Cir. 1997) (holding that the government was not required to disclose the contents of personnel files of testifying officers or submit them for in camera review simply based on the defendant's unsupported contention that they might contain information of significance to his case); *see also Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S. Ct. 837, 846, 51 L. Ed. 2d 30 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one.")

Graves offered no evidence that the government possessed favorable evidence regarding cigarette smuggling at Coleman by the victims in this case, Officer Rocky Velazco and Officer Christopher Wynter. When the district court questioned the Government as to potential *Brady* material, the Government

explained that it had no record of either victim being investigated for any reason, cigarette smuggling or otherwise. Furthermore, even if such favorable evidence existed, Graves has not demonstrated that there would have been a different outcome at trial had the information been produced. Therefore, there was no *Brady* violation.

## II.

As noted above, we review allegations of a *Brady* violation *de novo*. *Jones*, 601 F.3d at 1266. The prosecutor may mark potential *Brady* material as a court exhibit and submit it to the court for an *in camera* inspection if its qualification as *Brady* material is debatable. *United States v. Jordan*, 316 F.3d 1215, 1252 (11th Cir. 2003).

The court denied Graves's request for an *in camera* review of the entire investigatory file related to cigarette smuggling at Coleman because it was not proper *Brady* material, was irrelevant, and would require excessive time and resources to review. Thus, the district court did not improperly fail to perform an *in camera* review.

## III.

We review a district court's decision with respect to the admissibility and reliability of expert testimony for an abuse of discretion and can only reverse a

district court's ruling if it is manifestly erroneous. *United States v. Frazier*, 387

F.3d 1244, 1258 (11th Cir. 2004) (en banc).

Pursuant to Federal Rule of Evidence 702:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The proponent of the expert testimony carries the burden of

showing reliability under Rule 702 by a preponderance of the evidence. *See*

*Frazier*, 387 F.3d at 1274 & n.6 (Tjoflat, J., concurring) (citing *Daubert v. Merrell*

*Dow Pharms., Inc.*, 509 U.S. 579, 592–93 & n.10, 113 S. Ct. 2786, 2796 & n.10,

125 L. Ed. 2d 469). Thus, the proponent must demonstrate that the witness is

qualified to testify competently, that his opinions are based on sound methodology,

and that his testimony will be helpful to the trier of fact. *See id.* at 1260 (majority

opinion).

The defense proffered Special Agent Dulay as an expert witness. The district

court ruled that Dulay could not testify as an expert because he merely had general

knowledge of contraband in Coleman, which was not relevant to the facts of this

case. Agent Dulay testified that not only was he not aware of either Officer

6

Velazco or Officer Wynter having any involvement in the smuggling of contraband, but further than he did not know who either officer was. The court accordingly expressed skepticism that any of Officer Dulay's proffered testimony would be relevant.

Further, the court expressed doubts as to whether Agent Dulay was qualified to testify as an expert because he had been working for the Office of the Inspector General for less than five years, his position required only a bachelor's degree, and he testified that he did not undergo any specialized training to perform his duties. Based on Agent Dulay's experience, training, and education, the district court did not err in concluding that Dulay was not qualified to render an opinion regarding smuggling at Coleman. Thus, considering the relevance of Dulay's proffered testimony, and his qualifications, the court did not abuse its discretion in excluding his testimony.

## IV.

Graves argues that the district court allowed the prosecutor to shift the burden of proof in closing argument by stating that the Government was not required to prove the cause of the fight. In general, it is prosecutorial misconduct for a prosecutor to make comments that prejudicially shift the burden of proof to the defendant. *United States v. Simon*, 964 F.2d 1082, 1086 (11th Cir. 1992).

"Such prosecutorial misconduct, if so pronounced and persistent that it permeates the entire atmosphere of the trial, requires reversal." *Id.* (citation and internal quotations omitted). Consequently, "prosecutors must refrain from making burden-shifting arguments which suggest that the defendant has an obligation to produce any evidence or to prove innocence." *Id.* However, even if a prosecutor makes statements that could have resulted in shifting the burden of proof to the defendant, the errors can be cured by a court's instructions regarding the burden of proof, as the jury is presumed to follow jury instructions. *Id.* at 1087.

The government's statement during its closing argument that it was not required to prove the reason for the attack was legally correct. The court instructed the jury that the government had the burden to prove Graves guilty beyond a reasonable doubt, that Graves was presumed innocent, and that Graves was not required to prove his innocence or produce any evidence at all. The district court did not err in allowing the government to argue as it did.

V.

Graves argues that the district court incorrectly calculated his base level offense by using U.S.S.G. § 2A2.2 for "Aggravated Assault," rather than U.S.S.G. § 2A2.4 for "Obstructing or Impeding Officers." Section 2A2.4, which applies to offenses that involve "Obstructing or Impeding Officers," contains a cross

reference instructing the sentencing court to apply § 2A2.2, rather than § 2A2.4, "if the conduct constituted an aggravated assault." *Id.* § 2A2.4(c). The definition of aggravated assault as provided in the application notes is "a felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon; (B) serious bodily injury; or (C) an intent to commit another felony." *Id.* § 2A2.2 cmt. n.1. Section 2A2.2's base offense level is 14, with incremental increases for specific offense characteristics, including the use of a weapon and the infliction of bodily injury, and for convictions under 18 U.S.C. § 111(b) or § 115. *Id.* § 2A2.2(a), (b).

The district court did not err in calculating Graves's sentence under § 2A2.2. The indictment charged that Graves "did use a deadly and dangerous weapon, and did inflict bodily injury," in violation of 18 U.S.C. § 111(a)(1) and (b). The jury found Graves guilty "of the offense of Forcibly Assaulting a Federal Officer With Use of a Deadly Weapon or Inflicting Bodily Injury in violation of 18 U.S.C. § 111(b) as charged in Count One of the Indictment." Graves stabbed Officer Velazco seventeen times; this conduct constitutes aggravated assault, rather than merely obstructing or impeding an officer. Thus, the district court properly sentenced Graves under § 2A2.2 for aggravated assault.

VI.

9

We review *de novo* the district court's application and interpretation of the

Sentencing Guidelines and review factual findings for clear error. *United States v.*

*Wilks*, 464 F.3d 1240, 1242 (11th Cir. 2006).

> Pursuant to § 4B1.1(a):
>
> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). "Prior felony conviction" is defined as:

> [A] prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed. A conviction for an offense committed at age eighteen or older is an adult conviction. A conviction for an offense committed prior to age eighteen is an adult conviction if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted (e.g., a federal conviction for an offense committed prior to the defendant's eighteenth birthday is an adult conviction if the defendant was expressly proceeded against as an adult).

*Id.* § 4B1.2, cmt. n.1. To determine whether a defendant was convicted as an adult,

we consider "the nature of the proceedings, the sentences received, and the actual

time served." *Wilks*, 464 F.3d at 1242 (citation omitted). We have held that a

conviction is considered an "adult conviction" if the defendant was convicted as an

adult and was sentenced to a term of imprisonment exceeding one year and one

month. *United States v. Pinion*, 4 F.3d 941, 943–44 (11th Cir. 1993) (citing U.S.S.G. § 4A1.2, cmt. n.7 (1991)).

Graves argues that the district court erroneously sentenced him as a career offender because one of the predicate offenses was a felony conviction that occurred when he was seventeen years old and resulted in his commitment to a youth program. Graves was sentenced to a lengthy prison term in an adult court for this offense. He initially served six years and, after violating probation while on supervised release, the rest of his twenty-year suspended sentence was imposed. The district court did not clearly err in determining that the 1997 conviction qualified as an adult conviction for purposes of a career-offender classification pursuant to § 4B1.1.

## VII.

Graves argues on appeal that the district court violated his Fifth and Eighth Amendment rights by considering a juvenile conviction in determining his career-offender status. Graves contends that under the precedent of *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), which prohibited the execution of juvenile offenders, using his juvenile conviction to impose a career-offender sentence violated evolving standards of decency.

Our precedent forecloses Graves's argument that Supreme Court precedent

11

from *Roper* precludes the use of juvenile convictions in imposing career offender status on a defendant. *See Wilks*, 464 F.3d at 1243 (holding that, after *Roper*, juvenile convictions can qualify as predicate offenses for sentence enhancement purposes). Accordingly, the district court did not err in determining Graves's career-offender status.

## VIII.

Graves concedes that his statements to FBI Agent Raby were hearsay but argues that they should have been admitted under Federal Rule of Evidence 803(3), the then-existing state of mind exception, Rule 804(b)(3), as a statement against interest, or Rule 106, the rule of completeness. Allen's only argument on appeal is that Graves's statements should have been admitted under Rule 804(b)(3). On appeal, Allen argues that the district court's ruling that the statement was inadmissible denied him a fair trial.

We review a district court's rulings on the admissibility of hearsay testimony for abuse of discretion. *See United States v. Brown*, 441 F.3d 1330, 1359 (11th Cir. 2006). However, if the defendant fails to raise a constitutional challenge to an evidentiary ruling in the district court, we will review for plain error only. *United States v. Turner*, 474 F.3d 1265, 1275 (11th Cir. 2007). "To demonstrate plain error, a defendant must show that there is (1) error, (2) that is plain and (3) that

12

affects substantial rights." *Id.* at 1276. This Court may exercise its discretion to notice a forfeited error only if the first three elements are met, and if "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). As an exception to the hearsay rule, Rule 803(3) permits "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed." We have held that the "state-of-mind exception does not permit the witness to relate any of the declarant's statements as to why he held the particular state of mind, or what he might have believed that would have induced the state of mind." *United States v. Duran*, 596 F.3d 1283, 1297 (11th Cir.), *cert. denied*, 131 S. Ct. 210 (2010). To be admissible under 803(3), the statement must also have been made at the time of the incident. *United States v. De La Cruz Suarez*, 601 F.3d 1202, 1216 (11th Cir.), *cert. denied*, 130 S.Ct. 3532 (2010).

Though Graves's statement does purport to explain his state of mind and

motive at the time of the incident, it was made after the fact and, thus, does not qualify under Rule 803(3). The district court did not abuse its discretion in excluding the confession on this ground.

"To be admissible under Rule 804(b)(3), a statement must satisfy three elements: (1) the declarant [must be] unavailable; (2) the statement so far tends to subject the declarant to criminal liability that a reasonable person in his position would not have made the statement unless he believed it to be true; and (3) the statement is corroborated by circumstances clearly indicating its trustworthiness." *United States v. Westry*, 524 F.3d 1198, 1214 (11th Cir. 2008) (per curiam) (brackets in original) (quotation and citation omitted). "While a determination of whether a statement is against the declarant's penal interest is purely a question of law subject to *de novo* review, . . . consideration of a statement's trustworthiness requires a review of findings of fact and a review of the trial court's application of a legal standard to the facts." *Id.* at 1215 (internal citation omitted).

In *Williamson v. United States*, 512 U.S. 594, 600–604, 114 S. Ct. 2431, 2435–37, 129 L. Ed. 2d 476 (1994), the Supreme Court held that collateral statements contained within a broader inculpatory confession are not admissible under Rule 804(b)(3). The Court was particularly concerned with the reliability and admissibility of statements implicating codefendants within a broader

14

self-inculpatory confession. *Id.* The Court instructed that to determine whether a statement is self-inculpatory, it must be viewed in context and in light of all the surrounding circumstances. *Id.*; *see also United States v. U.S. Infrastructure, Inc.*, 576 F.3d 1195, 1208–09 (11th Cir. 2009) (holding that a statement made by a county official regarding bribes was inculpatory because it "did not seek to lessen blame *as to his crime* by spreading blame to others"); *United States v. Thomas*, 571 F.2d 285, 288 (5th Cir. 1978) ("We do not read Rule 804(b)(3) to be limited to direct confessions of guilt. Rather, by referring to statements that 'tend' to subject the declarant to criminal liability, the Rule encompasses disserving statements by a declarant that would have probative value in a trial against the declarant.").

"[I]n determining trustworthiness, the [district] court should determine what the possibility was that the declarant fabricated the statement. In other words, it must be unlikely, judging from the circumstances, that the statement was fabricated." *United States v. Jernigan*, 341 F.3d 1273, 1288 (11th Cir. 2003) (brackets in original) (citation omitted). Furthermore, we are "entitled to consider the fact that [the person proffering the testimony is] a prison inmate in determining whether his testimony would be trustworthy." *Id.* (brackets in original) (citation omitted).

Graves exercised his Fifth Amendment right not to testify and was thus

15

unavailable for the purposes of Rule 804. Fed. R. Evid. 804(a)(1). The portions of Graves's statement in which he admits to stabbing Velazco multiple times and admits full responsibility for his actions are self-inculpatory. However, Graves also made a lengthy and broad confession to Agent Raby, detailing a cigarette deal with Velazco and blaming the fight on the failed cigarette transaction, which was not inculpatory. Instead, it sought to deflect Graves's culpability for the attack by claiming it occurred due to Velazco's own illegal conduct and create a defense that Velazco wasn't acting in his official capacity at the time of the attack. Further, the district court found that the cigarette portion of the testimony did not have corroborating circumstances indicating trustworthiness. The district court found that this portion of the testimony was likely fabricated based upon the lack of evidence in the record to support Graves's claim that he was engaged in a cigarette transaction. The district court did not abuse its discretion, as to Defendant Graves, or plainly err, as to Defendant Allen, in refusing to admit the confession under Rule 804(b)(3).

The "rule of completeness," Fed. R. Evid. 106, states that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously

16

with it." Rule 106 only applies when a written document is admitted into evidence, or when a document is used in such a way that is "tantamount" to introduction of the document itself. *United States v. Ramirez-Perez*, 166 F.3d 1106, 1113 (11th Cir. 1999).

The testimony at trial regarding statements made by Graves after the fight were all verbal statements made contemporaneously as the officers struggled to control Graves during the incident. The officers testified as to statements they personally heard Graves make. The government did not introduce any written or recorded statement and, thus, by its plain language, Rule 106 does not apply.

As Graves's confession does not qualify as an exception to the hearsay rule under Rules 803(3), 804(b)(3), or 106, the district court did not abuse its discretion in excluding his statement as inadmissible hearsay. Furthermore, this exclusion did not violate Allen's right to a fair trial because he failed to show that the exclusion was plain error that violated his substantial rights.

Upon a thorough review of the entire record on appeal, and after consideration of the parties' briefs, we affirm.

**AFFIRMED.**