[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11736
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-20832-FAM-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALLEN KYODE PACQUETTE,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 4, 2014)

Before TJOFLAT, JORDAN, and FAY, Circuit Judges.

PER CURIAM:

Allen Kyode Pacquette appeals his conviction for importing 500 grams or

more of cocaine, in violation of 21 U.S.C. §§ 952(a) and 960(b)(2)(B), and

possessing with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii).  He argues the district judge erred in excluding his exculpatory statement, when it was admissible under the rule of completeness.  We vacate Pacquette's conviction and remand for a new trial.

## I. BACKGROUND

On information from a confidential informant, United States Customs and Border Protection ("CBP") officers stopped Pacquette at Miami International Airport, after his arrival from St. Thomas, U.S. Virgin Islands.  A search revealed the bag he was carrying contained approximately one kilogram of cocaine, as well as clothing and several personal items.  He was arrested and subsequently indicted.

After stipulation by the parties, the primary issue at trial was whether Pacquette had known his bag contained cocaine.  Pacquette generally denied knowing of the cocaine and contended it was planted.  The government's case included testimony from two CBP officers.  The officers testified differently regarding whether Pacquette claimed he had known his bag contained cocaine.

On direct examination, the government asked CBP Officer Robert Rivera about his initial encounter with Pacquette, while he was disembarking from the airplane.  Officer Rivera described his exchange with Pacquette:

> My questions to [Pacquette] were, if this is your bag, which he answered yes.  Did you pack your bags?  He stated yes.  I also asked him, did anybody give you anything to bring back to the United States?  He said no.  Does everything in here belong to you?  Yes.

2

R at 287.  The government further questioned Officer Rivera:

> Q. And just to be clear, the defendant claim[ed] that everything in the bag belonged to him?
> A. That's correct.

R at 287.  CBP Officer Raul Ramirez gave this account of his later discussion with Pacquette, which occurred after Officer Rivera had discovered the cocaine.

> Q. And did the defendant claim responsibility for everything in the bag?
> A. At that moment he said no and I stopped him, and I said, what do you mean by no? He said well—[h]e pointed at my supervisor. He said, he found something in the bag.

R at 310.

On cross-examination of both witnesses, defense counsel attempted to elicit the fact that, in the inspection area, Pacquette had disclaimed the cocaine found in his bag.  The district judge forbade defense counsel from asking about Pacquette's denial and concluded it was hearsay and an exculpatory statement, admissible only if Pacquette testified.

In her closing argument, defense counsel stated twice that Pacquette had denied the cocaine belonged to him.  The judge raised the possibility of a mistrial because of defense counsel's continued reference to the denial, but instead instructed jurors:

> [Y]ou can only consider evidence that has been admitted.  And in this particular case, there is no evidence that I have admitted that the defendant denied . . . knowing the contents of the bag.  Therefore, I

instruct you to disregard any mention by any lawyer, including Ms. Batoff, the defense lawyer, about the denial of the contents of the bag because that's not evidence in this particular case.

R at 462.  The jury convicted Pacquette on both indictment counts.

## II. DISCUSSION

On appeal, Pacquette argues the district judge erred by excluding his statement disclaiming knowledge of the cocaine found in his bag.  Pacquette argues the judge applied an incorrect legal standard, when he concluded the rule of completeness does not apply to exculpatory statements.  Pacquette further contends he should have been allowed to introduce the parts of his pre-arrest oral statement necessary to clarify and explain the portions that had been admitted at trial.

We review a district judge's evidentiary rulings for abuse of discretion. *United States v. Gibson*, 708 F.3d 1256, 1275 (11th Cir.), *cert. denied*, No. 13-5826, 2013 WL 4402308 (U.S. Oct. 7, 2013).  Discretion is abused by applying an incorrect legal standard, or by making findings of fact that are clearly erroneous. *See id.*

A. The Rule of Completeness in Oral Statements

Under the common-law "rule of completeness," the party "against whom a part of an utterance has been put in, may in his turn complement it by putting in the remainder, in order to secure for the tribunal a complete understanding of the total tenor and effect of the utterance." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153,

4

171, 109 S. Ct. 439, 451 (1988) (citation internal quotation marks and alteration omitted). The rule of completeness is partially codified in Federal Rule of Evidence 106. *Id.* at 171-72, 109 S. Ct. at 451. It provides: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106.

Rule 106 does not apply to oral statements. *See* Fed. R. Evid. 106 advisory committee's notes ("[T]he rule is limited to writings and recorded statements and does not apply to conversations."). However, we have extended the fairness standard in Rule 106 to oral statements "in light of Rule 611(a)'s requirement that the district court exercise 'reasonable control' over witness interrogation and the presentation of evidence to make them effective vehicles 'for the ascertainment of truth.'" *United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005) (quoting Fed. R. Evid. 611(a)) (citing *United States v. Range*, 94 F.3d 614, 620-21 (11th Cir. 1996)). Accordingly, the rule of completeness applies to written statements via Rule 106, and to oral statements through Rule 611(a).

The government does not cite, discuss, or otherwise acknowledge *Baker*. Rather, the government argues that our 1996 decision in *Range*, where we discussed the rule of completeness and first announced the application of the Rule

5

106 fairness standard to oral statements, is dicta.  The government contends the rule of completeness does not apply when a party has not introduced a written or recorded statement and cites our 1999 decision in *United States v. Ramirez-Perez*, 166 F.3d 1106 (11th Cir. 1999).

We disagree.  First, our discussion of the rule of completeness in *Range* was not dicta; we applied facts to the rule before determining the district judge's ruling was correct.  *See Range*, 94 F.3d at 620-21.  Second, the government misconstrues *Ramirez-Perez*.  In that case, the defendant raised only Rule 106 on appeal and argued it required the introduction of a hearsay written statement when the witness testified only to the oral statement.  *See Ramirez-Perez*, 166 F.3d at 1111-13.  In this case, witnesses testified to part of Pacquette's oral statement, and he sought admission of the remainder of that oral statement; he did not seek to admit any written statement.[1]  Third, even if our rulings in *Range* and *Ramirez-Perez* were in conflict, which we do not find, we are bound by the earlier ruling in *Range*.  *See United States v. Hogan*, 986 F.2d 1364, 1369 (11th Cir. 1993) ("[I]t is the firmly established rule of this Circuit that each succeeding panel is bound by the holding of the first panel to address an issue of law, unless and until that holding is overruled en banc, or by the Supreme Court.").  In our circuit, the rule of

---

[1] A written statement could still be used for other purposes, including impeachment.  *See Ramirez-Perez*, 166 F.3d at 1113 n.9.

6

completeness applies to oral statements through Rule 611(a).  *See Baker*, 432 F.3d at 1223; *Range*, 94 F.3d 620-21; Fed. R. Evid. 611(a).

B. Application of the Rule of Completeness

As we have explained, we evaluate whether the remainder of an oral statement should be admitted under the rule of completeness by using the Rule 106 fairness standard.  "Under the Rule 106 fairness standard, the exculpatory portion of the defendant's statement should have been admitted if it was relevant to an issue in the case and necessary to clarify or explain the portion received."  *Range*, 94 F.3d at 621.  Pacquette's excluded statement that the cocaine did not belong to him was relevant to the primary issue in the case, his knowledge, and was relevant to the admitted portions of his statement.  Determining whether the remainder of his statement was necessary to clarify or explain the admitted portion requires analysis of the admitted testimony.

Officer Rivera's testimony regarding Pacquette's admission was technically accurate, but incomplete.  While Pacquette initially had claimed everything in his bag, that statement was made prior to the discovery of the cocaine.  Pacquette was entitled to cross-examine Officer Rivera to provide the jury with a complete description of the facts and the effect of his admission.  That is, upon Officer Rivera's discovery of the cocaine, Pacquette disclaimed knowledge of it.  Because the district judge disallowed cross-examination on this subject, the government

7

was able to characterize Pacquette's initial statement as admitting the cocaine found in his bag belonged to him.

Officer Ramirez's later testimony of Pacquette's denial was muddled and confusing. Further, his testimony "[a]t that moment [Pacquette] said no" was in evidence. R at 310. To clarify the meaning and significance of that testimony, defense counsel was entitled to reference the denial and present other necessary portions of the statement. The district judge, by prohibiting cross-examination and excluding Pacquette's statement merely because it was exculpatory, applied an incorrect legal standard and reached an erroneous result. Therefore, the judge abused his discretion.

## C. Harmless Error

"Even if an evidentiary ruling is erroneous, that ruling will result in reversal only if the error was not harmless." *United States v. Khanani*, 502 F.3d 1281, 1292 (11th Cir. 2007) (citations and internal quotation marks omitted). An error is harmful if, in light of the entire record, there is a reasonable likelihood it affected the defendant's substantial rights. *See id.*

The government emphasized the "fact" that Pacquette did not protest when confronted with the cocaine. In closing argument, the prosecutor stated:

> The number one reason we know [the cocaine] couldn't have been planted is the defendant's own behavior. . . . [I]f it were planted, he would have been shocked. He would have protested. The three

officers testified that they all interacted with him and he didn't say anything. He didn't contest it. He didn't protest.

R at 479-80. The prosecutor continued:

If you got stuck with that much cocaine and you had no idea it was there you would maintain that it wasn't yours. You would persist in telling people, I got planted. I got duped.

R at 480. Although the jury was led to believe otherwise, that is exactly what Pacquette had done.

The district judge magnified the error by instructing the jury that "there is no evidence . . . [Pacquette] denied . . . knowing the contents of the bag." R at 462. Not only was the instruction inaccurate—Officer Ramirez had testified to that fact—but it also reinforced the government's erroneous assertions that Pacquette had not denied knowing about the cocaine.

Following our review of the entire record, we cannot say, in a trial primarily about whether Pacquette knew his bag contained cocaine, that the district judge's improper exclusion of his denial was harmless.[2] Especially in a case where the government characterized Pacquette's failure to disclaim the cocaine as the "number one reason" undermining the defense, the jury should have been given the

---

[2] Because we have vacated Pacquette's conviction for harmful error, we need not address his argument the error violated his constitutional rights.

9

opportunity to weigh the credibility of Pacquette's denial against the remaining evidence.[3]  R at 479.

Pacquette's conviction is **VACATED**, and we **REMAND** for a new trial consistent with this opinion.

---

[3] We also note the remaining evidence establishing Pacquette's knowledge was not overwhelming.  His nervous behavior, small amount of cash, limited luggage, one-way ticket, and confusing recall of travel plans are not sufficiently compelling to outweigh the potential harm from the evidentiary error.

10