RENDERED: FEBRUARY 19, 2015
TO BE PUBLISHED

# $\mathfrak{Supreme}$ $\mathfrak{Court}$ $\mathfrak{of}$ $\mathfrak{Kentucky}$

2014-SC-000036-MR

STEPHEN SYKES                APPELLANT

ON APPEAL FROM JEFFERSON CIRCUIT COURT
V.       HONORABLE CHARLES LOUIS CUNNINGHAM, JR., JUDGE
NO. 10-CR-001553

COMMONWEALTH OF KENTUCKY          APPELLEE

**OPINION OF THE COURT BY JUSTICE CUNNINGHAM**

**<u>AFFIRMING IN PART, REVERSING AND VACATING IN PART,</u>**

**<u>AND REMANDING</u>**

Around 10:30 p.m. on May 10, 2010, Appellant, Stephen Ricardo Sykes robbed the China Wok—a take-out restaurant located in the Hazelwood strip mall in Louisville. The China Wok was operated by Xiang Lin and his wife Nana Xiao. Both were present at the restaurant when Sykes robbed them of approximately 80 dollars. During the robbery, Sykes shot Lin multiple times in the chest and abdomen with a .22 caliber pistol, causing severe wounds. Eric Underwood served as Sykes' lookout but did not enter the restaurant. After the shooting, Sykes and Underwood fled the scene and split the money. The two were eventually apprehended and arrested several days later.

Sykes was indicted by a Jefferson County grand jury for criminal attempt to commit murder, first-degree assault, two counts of first-degree robbery, one count of first-degree burglary, possession of a hand gun by a convicted felon,

wanton endangerment, and tampering with physical evidence. A Jefferson Circuit Court jury convicted Sykes on all counts with the exception of first-degree assault and burglary. The jury recommended a sentence of 20 years' imprisonment for attempted murder, ten years for each robbery conviction, five years for the possession conviction, one year for wanton endangerment, and one year for the tampering conviction.

The court ordered that the attempted murder sentence run consecutively with all the other sentences, which were to run concurrently with each other for a total sentence of 30 years' imprisonment. Sykes now appeals his judgment and sentence as a matter of right pursuant to § 110(2)(b) of the Kentucky Constitution. Three issues are raised and addressed as follows.

## Suppression

Sykes contends that the trial court erred by denying his motion to suppress his confession, which he argues was coerced and involuntary. This issue is briefed as Sykes' second argument. His primary argument is that the portion of his confession that was presented to the jury was improperly redacted. However, we address the suppression issue first because a determination that the trial court erred in suppressing the confession would render Sykes' redaction argument moot. "When reviewing a trial court's denial of a motion to suppress, we utilize a clear error standard of review for factual findings and a de novo standard of review for conclusions of law." *Jackson v. Commonwealth,* 187 S.W.3d 300, 305 (Ky. 2006).

2

When determining if a confession is the result of coercion, we look at the totality of the circumstances to determine the voluntariness of a statement. *Henson v. Commonwealth*, 20 S.W.3d 466, 469 (Ky.1999) (*citing Arizona v. Fulminante*, 499 U.S. 279, 286–88, (1991)). Specifically, we consider the following factors:

> (1) whether the police activity was "objectively coercive;" (2) whether the coercion overbore the will of the defendant; and (3) whether the defendant showed that the coercive police activity was the "crucial motivating factor" behind the defendant's confession.

*Id.* (*citing Morgan v. Commonwealth*, 809 S.W.2d 704, 707 (Ky.1991)). Therefore, "the threshold question to a voluntariness analysis is the presence or absence of coercive police activity . . . ." *Bailey v. Commonwealth*, 194 S.W.3d 296, 300 (Ky. 2006); *see also Colorado v. Connelly*, 479 U.S. 157, 167 (1986). After reviewing Sykes' confession in its entirety and specifically considering his age and psychological history, we determine that there was no coercive police activity here that would render Sykes' confession involuntary.

First, Sykes expressly acknowledged that he wanted to speak with Detective Mike Perry. Perry read Sykes his rights and then had him sign a waiver form after first confirming that Sykes had read the form. Thus, the *Miranda* requirements were satisfied.

The interrogation lasted several hours. During that time period, Detective Perry and Detective Chris Middleton employed diverse interrogation techniques, none of which were improper. As the trial court noted, "Det. Perry asked mostly open ended questions and allows Sykes to explain his answers."

3

Sykes was eighteen years old at the time of the interrogation. Although young, he was clearly an adult. Furthermore, Sykes has had several previous encounters with the criminal justice system.

The trial court also considered Sykes' psychological records that were offered in support of the suppression motion. The court determined that Sykes had endured a host of psychological disorders, including Bipolar Schizophrenia. In its opinion and order denying the motion, the trial court noted that Sykes participated in an affirmative and rational manner. Specifically, the court determined that "[t]hrough the conversation, Mr. Sykes shows a coherent grasp of his legal situation." The court concluded that "[w]hatever concerns were created by a thorough reading of Mr. Sykes' psychiatric history are allayed by a viewing of the interrogation tape." After reviewing the interrogation, we agree. *See also Keeling v. Commonwealth*, 381 S.W.3d 248, 267-69 (Ky. 2012) (where defendant's post-arrest statements to police were not rendered involuntary due to defendant's mental illness).

However, Sykes contends that the trial court's findings are incomplete because the court did not discuss an unrecorded part of the interrogation. Our review of the interrogation reveals a time gap in the recording, the duration and purpose of which are unclear. It is clear, however, that immediately after the break, Detectives Perry and Middleton re-entered the interrogation room and asked Sykes if he would consent to a polygraph test. Sykes agreed, then suddenly confessed to the robbery and shooting.

4

At the suppression hearing, Detective Perry acknowledged that Detective Middleton continued to speak with Sykes in the detectives' office during the break, although Perry was not present for that exchange. While this gap in the recorded interrogation is not ideal for purposes of appellate review, it does not invalidate the confession. Specifically, Sykes fails to articulate any improper or "coercive police activity" that occurred during that time. Considering the totality of the confession in light of Sykes' age and psychological history in particular, we affirm the trial court's denial of Sykes' motion to suppress his confession.

## Rule of Completeness

Sykes further contends that the trial court erred by admitting his improperly redacted confession to the jury. Specifically, the Commonwealth introduced a redacted recording of Sykes' police interrogation that lasted approximately 50 minutes and was played for the jury without interruption. We review the trial court's determination under an abuse of discretion standard. *Commonwealth v. Stone*, 291 S.W.3d 696, 703 (Ky. 2009). Known as the rule of completeness, KRE 106 provides as follows:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in *fairness* to be considered contemporaneously with it. (Emphasis added).

In determining fairness, "the issue is whether 'the meaning of the included portion is altered by the excluded portion.'" *Young v. Commonwealth*, 50 S.W.3d 148, 169 (Ky. 2001) (citing *Commonwealth v. Collins*, 933 S.W.2d 811,

5

814 (Ky. 1996)). Accordingly, KRE 106 "allows a party to introduce the remainder of a statement offered by an adverse party for the purpose of putting the statement in its proper context and avoiding a misleading impression . . . ." *Soto v. Commonwealth*, 139 S.W.3d 827, 865-866 (Ky. 2004).

Prior to trial, the court held a hearing where it determined the necessary redactions. One previously authorized part of the recording introduced at trial included Sykes tearfully confessing to the robbery and the shooting. The confession was preceded by an extensive line of questioning by detectives. Sykes does not take issue with that part of the recording. However, less than an hour before the recording was to be played for the jury, the Commonwealth announced that it intended to redact the recording further. Over Sykes' objection, the court authorized additional redactions and admitted the following:

> Det. Perry: Well, the fortunate thing about this is that, as of now, that the Chinese guy, he's still alive.
>
> Sykes: Yes sir. So I'm being charged with attempted murder.

Although the redacted recording immediately stopped after this exchange, the interrogation did not end there. These are the statements that immediately followed but were not heard by the jury:

> Det. Perry: No. No, a shooting is a shooting. I don't think that it's an attempted murder. Were you trying to kill him?
>
> Sykes: No sir. I didn't even mean to shoot the guns. It was like my reaction, how he was coming.

Sykes argues that omitting this exchange violates the rule of completeness and constitutes reversible error. We agree.

6

KRE 106 "is needed to guarantee that admitted statements are fully understandable and clear . . . ." *James v. Commonwealth*, 360 S.W.3d 189, 205 (Ky. 2012). Omitting the contested sentences here rendered Sykes' final words unclear and ambiguous. As presented to the jury, Sykes' comment regarding the attempted murder charge was misleading because without the response that followed, it could have been interpreted as either an affirmative statement or as a question. Moreover, the detective immediately responded by asking Sykes if he was trying to kill the victim. Sykes replied in the negative and then articulated exculpatory statements demonstrating that he did not possess the requisite intent to murder the victim.

We recognize that KRE 106 does not "'open the door' for introduction of the entire statement or make other portions thereof admissible for any reason once an opposing party has introduced a portion of it." *Schrimsher v. Commonwealth*, 190 S.W.3d 318, 331 (Ky. 2006). Many of our KRE 106 cases have been decided in that context. *See, e.g., Young*, 50 S.W.3d at 169 (affirming trial court's decision to exclude the defendant's entire six hour interrogation recording); *McAtee v. Commonwealth*, 413 S.W.3d 608, 629 (Ky. 2013). Clearly, the present case is distinguishable.

At trial, Sykes did not request that the trial court admit the entirety of his recorded interrogation or attenuated portions thereof; rather, he merely sought the introduction of several exculpatory sentences that immediately followed and clarified a statement that the Commonwealth introduced to demonstrate his guilt. Omitting the contested portions of the confession in this

7

instance not only presented an incomplete narrative; it presented an incomplete exchange. Certainly, this violates the rule of "completeness."

*Rodgers v. Commonwealth* provides an example of the proper application of KRE 106 that is most germane to the present case. 285 S.W.3d 740 (Ky. 2009). In *Rodgers*, the Commonwealth introduced testimony of interrogating Detective Leigh Whelan, who quoted or paraphrased from the redacted versions of the defendant's interrogation transcripts. *Id.* at 744. Over the defendant's objection, the trial court limited cross-examination to the several sentences that preceded the statement the Commonwealth introduced to demonstrate the defendant's guilt. *Id.* at 748. We reasoned that by permitting the defendant to introduce that portion of his statement immediately preceding the "I shot at him" statement introduced by the Commonwealth, "the court allowed [the defendant] to complete what was arguably an incomplete and potentially misleading reproduction of that statement." *Id.* at 749. Accordingly, we held that the trial court did not abuse its discretion under KRE 106. *Rodgers*, 285 S.W.3d at 748-49.

In contrast, the trial court in the present case abused its discretion by *not* admitting the portions of Sykes' interrogation that would have completed a statement that was arguably "incomplete and potentially misleading . . . ." *Id.* at 749. Also contrary to *Rodgers*, the interrogating detective here was not cross-examined regarding the omitted portions of the recording. *Id.* at 748. As previously noted, the interrogating detective in *Rodgers* quoted or paraphrased from the redacted versions of the defendant's interrogation transcripts. *Id.* at

8

744. In the present case, Detective Middleton did not provide a recitation of the interrogation transcripts; rather, his testimony primarily provided a foundation for the recording introduced by the Commonwealth.

Furthermore, we cannot conclude that the trial court's error was harmless. RCr 9.24. Because this constitutes reversible error under our evidentiary rules, we need not address Sykes' argument that this error violated his constitutional rights. *See U.S. v. Pacquette*, 557 Fed.Appx. 933, 938 n. 2 (11th Cir. 2014) (holding that district court's error in excluding defendant's exculpatory statement disclaiming knowledge of cocaine found in his bag was not harmless under FRE 106); *see also Rodgers*, 285 S.W.3d at 749.

During the Commonwealth's closing argument, the prosecutor replayed the final portions of the redacted recording for the jury and specifically argued that this exchange demonstrated Sykes' intent to kill. Again, the tape ended after the word murder. The prosecutor immediately asked the jury "what was his reaction there? Was it, [sigh], thank goodness he's alive? No. He automatically goes to 'so I'm being charged with attempted murder.'"

The omitted portions of the confession with which Sykes takes issue speak directly to intent to kill, or rather, lack thereof. As previously noted, the interrogating detective expressly asked Sykes if he was trying to kill the victim, to which Sykes responded, "No sir. I didn't even mean to shoot the guns. It was like my reaction, how he was coming." Admitting these statements may have aided the jury in its determination concerning the attempted murder charge. The jury was also instructed on first-degree assault. Admitting the

9

contested portions of the recording could not have reasonably exculpated Sykes of a first-degree assault conviction. However, Sykes was acquitted of first-degree assault and convicted of attempted murder—a charge where proving intent to kill is paramount. Therefore, we hold that the improper redaction here constitute reversible error.

## Unanimity

Lastly, Sykes argues that the jury did not unanimously convict him of possession of a handgun by a convicted felon. This issue is unpreserved and we will review for palpable error. *Kingrey v. Commonwealth*, 396 S.W.3d 824, 831 (Ky. 2013); *Martin v. Commonwealth*, 409 S.W.3d 340, 346–47 (Ky. 2013) (applying palpable error review to jury instructions where the jury instruction was not correctly given).

Prior to trial, the court severed the handgun possession charge from the remainder of the offenses. After convicting Sykes on the other charges, the jury considered the evidence concerning the possession offense. The Commonwealth presented evidence that Sykes, a convicted felon, possessed a .22 caliber handgun on May 10, 2010—the date of the robbery—and May 12, 2010—the date he was arrested. During closing argument, the prosecutor informed the jurors that they could consider both dates when determining guilt. *Kingrey v. Commonwealth* is instructive.

In *Kingrey*, the jury instruction provided for conviction if the jury determined that the defendant "committed the crime between January 1, 2007, and May 31, 2008." *Id.* at 830. Evidence was presented at trial that, during

10

this time period, the defendant committed multiple acts that constituted the offense for which he was convicted. *Id.* at 831. We reversed because it was unclear "which instance of the crime is the basis of his conviction . . . ." *Kingrey*, 396 S.W.3d at 832. Accordingly, the defendant's "right to a unanimous jury verdict was violated by the jury *instruction*." *Id.* at 831. (Emphasis added). In contrast, the jury instruction at issue in the present case stated that on or about May 10, 2010, Sykes knowingly possessed and/or transported a handgun. Thus, this case is readily distinguishable from *Kingrey*. There was no error here.

## Conclusion

For the foregoing reasons, we reverse and vacate Sykes' conviction of criminal attempt to commit murder and affirm the remainder of his convictions. Accordingly, we remand this case to the trial court for further proceedings consistent with this opinion.

Minton, C.J.; Abramson, Cunningham, Keller, Noble and Venters, JJ., sitting. All concur.

COUNSEL FOR APPELLANT:

Daniel T. Goyette
Joshua Michael Reho
Office of the Louisville Metro Public Defender

COUNSEL FOR APPELLEE:

Jack Conway
Attorney General of Kentucky

Leilani K.M. Martin
Assistant Attorney General