**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 29, 2016**

# In the Court of Appeals of Georgia

A15A2386. MORALES v. THE STATE.

BRANCH, Judge.

On appeal from his conviction for rape, Christian Morales argues that the evidence did not support the jury's verdict and that the trial court erred when it denied his motion to suppress his statement to police and when it admitted only the incriminating portions of that statement. We find no reversible error and affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004) (citation omitted). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (citation omitted).

So viewed, the record shows that on the evening of March 3, 2013, the victim, a mother of three, went to a DeKalb County club to dance, fully clothed, with men for a dollar per song. After she had danced with a few men, Morales approached the victim as she was eating and began talking to her. Morales, who was accompanied by several others, wrote his name and phone number on the victim's hand and asked her to call him. As the victim prepared to leave the club, Morales offered the victim a ride, which she refused, telling him that she was going to take a taxi. As the victim went down the steps to the club's taxi stand, Morales insisted that she ride home with him. When the victim continued to refuse, Morales put his hand over her mouth and told her to be quiet or something was going to happen to her.

Morales and another man, Elman Mendez, then forced the victim into the backseat of a car driven by a third man, Ruperto Mencho, who drove to a nearby park. A fourth man called Zurdo, who had been seated in the front seat of the car and was wearing a white shirt, took the victim out of the car, beat her, placed her on the grass, and told her that she was going to die. When it became clear that the victim was not going to lose consciousness, the man called the other men for help in taking the

victim's clothes off and holding her down on the ground. Zurdo forcibly penetrated the victim's vagina with his penis while he held his hand over the victim's mouth. Zurdo then forced his penis into the victim's mouth, during and after which Mencho and Morales also had forcible intercourse with the victim. The victim's cell phone, money, and keys were taken during the attack. Morales later confessed to being present throughout the attack, to having intercourse with the victim, and to ejaculating inside her a "little."

As Mendez also attempted to rape the victim, the three other men heard sirens and fled. When Mendez apologized to the victim, the victim responded that if he stayed with her, she would not tell the police anything about the incident. When Mendez agreed, the victim took him to a house nearby, telling him that her aunt lived there. No one answered the door at that house, however. At the second house, a woman opened the door, but she began to scream for the police when the victim told her that she had been raped. Although no one responded at the third house, two police cars soon arrived on the street, and the victim, who was found walking with Mendez, mouthed the words "Help me" to one of the police officers. After she had been separated from Mendez, the victim told the officers that she had been attacked by four

3

men, including Mendez. On the basis of information gained from Mendez the following day, police arrested Mencho and Morales. Zurdo was never apprehended.

At the hospital to which the victim was taken by police, an examination showed that the victim, who was crying, dirty, and disheveled, had suffered numerous external injuries, including scratches on her face and bruises on her neck, inner thighs, and genitals, as well as injuries to her cervix. Two unarmed detectives were present at an interview with Morales, who was not restrained. One of the detectives, who spoke Spanish, read a Miranda warning printed in Spanish to Morales and obtained Morales's initials and signature on that warning. The detective then interviewed Morales in Spanish. During the first part of the fifty-two minute interview, all of which was transcribed, Morales admitted that the other men had told him that they "were going to rape" the victim, but denied that he had done so. Toward the end of the interrogation, however, Morales admitted that he had intercourse with the victim and had ejaculated a "little" into her body. In the course of the interview, the detective urged Morales to "tell the judge" "sincerely" that he had "made a mistake" and to write the words "Forgive me for everything" on his recorded statement.

Mencho, Morales, and Mendez were charged with rape and kidnapping. Only Mencho's DNA was detected in a swab taken from the victim's vagina. Mencho pled guilty to rape, and Mendez to aggravated assault with intent to rape. After a hearing, Morales's motion to suppress his statement on the ground that it was not voluntarily given was denied. After a trial at which Morales did not testify, a jury acquitted him of kidnapping but found him guilty of rape. Morales was convicted and sentenced to life in prison. His motion for new trial was denied.

1. Although Morales challenges the sufficiency of the evidence against him, that evidence, including his confession to having intercourse with the victim after his confederates had beaten and raped her, authorized the jury to conclude that Morales had sexual intercourse with the victim forcibly and against her will and was therefore guilty of rape. See OCGA § 16-6-1 (a) (1) (defining rape); *McKenzie v. State*, 187 Ga. App. 840, 842 (1) (371 SE2d 869) (1988) (affirming co-defendants' convictions for rape when victim had cervical abrasions consistent with forcible sex); *Jackson*, supra.

2. Morales argues that the trial court erred in denying his motion to suppress his statement because (a) his Miranda rights were not waived knowingly and intelligently and (b) his statement to police was not freely and voluntarily given. We disagree.

5

On appellate review of "a trial court's grant or denial of a motion to suppress, the trial court's findings on disputed facts will be upheld unless clearly erroneous, and its application of the law to undisputed facts is subject to de novo review." *Barrett v. State*, 289 Ga. 197, 200 (1) (709 SE2d 816) (2011) (citation omitted). "[W]hether a defendant lacks the capacity to understand and waive such rights due to a mental deficiency or illiteracy is a question of fact for the trial court to determine." Id. "The admissibility of a defendant's statements is determined based on the totality of the circumstances." *Drake v. State*, 296 Ga. 286, 289 (2) (766 SE2d 447) (2014) (citation omitted).

(a) The record shows that at the time of his interview, Morales was 18 years old, had been in the United States for four months, and had finished the sixth grade in Guatemala. The copy of the Miranda warnings that Morales initialed and signed was in Spanish, and was read to Morales in Spanish, and the transcript of the interview shows that when Morales responded to questions as to whether he understood his Miranda rights, he responded, "Hmm" and nodded his head, at which point the detective told him that he was required to respond affirmatively by saying, "Yes," which Morales did. This trial court did not clearly err when it concluded that, under the totality of the circumstances, Morales understood his Miranda rights and

6

knowingly and voluntarily, without coercion, waived those rights. *Barrett*, 289 Ga. at 200 (trial court's factual finding that defendant did not suffer from cognitive impairment sufficient to show that he did not have the capacity to understand and knowingly waive Miranda rights was not clearly erroneous).

(b) OCGA § 24-8-824 provides: "To make a confession admissible, it shall have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury."

> The promise of a benefit that will render a confession involuntary . . . must relate to the charge or sentence facing the suspect. Generally, the "hope of benefit" to which the statute refers has been construed as a hope of lighter punishment.

*Foster v. State*, 283 Ga. 484, 485-486 (2) (660 SE2d 521) (2008) (citations and punctuation omitted). Specifically, neither a police officer's nor a family member's exhortation that a defendant tell the truth or ask for forgiveness constitutes an impermissible hope of benefit. *Lee v. State*, 270 Ga. 798, 800 (2) (514 SE2d 1) (1999) (officer's advice that a defendant should "help [him]self out" was merely an encouragement to tell the truth, which did not amount to a hope of benefit under former OCGA § 24-3-50); see also *Duke v. State*, 268 Ga. 425, 426 (2) (489 SE2d 811) (1997); *Davenport v. State*, 277 Ga. App. 758, 759 (627 SE2d 133) (2006)

7

(victim's mother's promise that if the defendant "confess[ed] right away," the family would ask the judge "for some amount of mercy," did not amount to any hope of benefit).

Here, this officer's statements that Morales should "tell the judge" "sincerely" that Morales had "made a mistake" and write the words "Forgive me for everything" on his recorded statement were mere exhortations that Morales should tell the truth. Because "no 'hope of benefit' springs from such an admonishment," *Edenfield v. State*, 293 Ga. 370, 375 (2) (744 SE2d 738) (2013), this trial court did not err when it concluded that Morales's confession was voluntary. Id.; see also *Drake*, 286 Ga. at 290-291 (3) (affirming trial court's determination that officers' pleas that defendant should tell the truth, their exaggerations of the strength of incriminating evidence, their falsehood that the victim had survived the shooting, and their insistence that they wanted to "help" did not, under the totality of the circumstances, make that defendant's statement involuntary); *Johnson v. State*, 295 Ga. 421, 425 (2) (761 SE2d 13) (2014) (officer's suggestion that defendant would be "well served by offering his version of events as a means of justifying or mitigating his role in the assaults" at issue did not render that defendant's statement involuntary) (citations omitted).

8

3. Morales also argues that in light of the admission of the incriminating portions of his statement into evidence, the trial court should have also admitted the earlier portions of that statement under the "rule of completeness" codified at OCGA §§ 24-1-106 and 24-8-822, and therefore erred when it granted the State's motion in limine to exclude those earlier portions. The State responds that because the earlier portions of the statement are self-serving declarations, they are not admissible as admissions against interest and remain inadmissible hearsay. We agree that Morales's entire statement should have been admitted under the rule of completeness, but conclude that the error was harmless.

(a) We review a trial court's ruling on a motion in limine for an abuse of discretion. *Hankla v. Jackson*, 305 Ga. App. 391, 392 (1) (699 SE2d 610) (2010) . However,

> [b]y its very nature, the grant of a motion in limine excluding evidence suggests that there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial. In light of that absolute, the grant of a motion in limine excluding evidence is a judicial power which must be exercised with great care.

*Andrews v. Wilbanks*, 265 Ga. 555, 556 (458 SE2d 817) (1995) (citation omitted).

The record shows that the State filed a motion in limine to exclude the "exculpatory and neutral portions" of Morales's statement in which he denied raping the victim on the ground that self-serving declarations of a defendant are inadmissible hearsay. The trial court granted the motion such that Morales was barred from cross-examining the detective as to all except the inculpatory sections of Morales's statement unless Morales decided to testify in his own defense. At trial, and after consultation with counsel, Morales decided not to take the stand, with the result that the detective testified only on direct examination as to Morales's admissions that he had sex with the victim and ejaculated inside her a "little."

A party's own admission, offered by an opponent, is not hearsay and is always admissible. OCGA § 24-8-801 (d) (2) (A).[1] However, a self-serving declaration, such as a statement of one's innocence, remains "inadmissible hearsay unless the declarant testifies and is subject to cross-examination." *Parker v. State*, 276 Ga. 598 (2) (581 SE2d 7) (2003) (citation omitted); see also OCGA § 24-8-802 (2014) ("Hearsay shall not be admissible except as provided by" other provisions of the Evidence Code).

---

[1] OCGA § 24-8-801 (d) provides in relevant part: "(2) Admissions by party-opponent. Admissions shall not be excluded by the hearsay rule. An admission is a statement offered against a party which is: (A) The party's own statement, in either an individual or representative capacity[.]"

On appeal, the State repeats that under these general principles, the exculpatory portions of Morales's statement remain inadmissible hearsay. But such a result would ignore Georgia's longstanding "rule of completeness," now codified as OCGA § 24-8-822 (formerly OCGA § 24-3-38), which provides that "[w]hen an admission is given in evidence by one party, it shall be the right of the other party to have the whole admission and *all the conversation connected therewith* admitted into evidence." (Emphasis supplied.) OCGA § 24-1-106, the counterpart of Federal Rule of Evidence 106,[2] likewise provides that

> [w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which, in fairness, should be considered contemporaneously with the writing or recorded statement.

As the Supreme Court of Georgia has recently noted, the rule of completeness

---

[2] Federal Rule 106 provides: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time." OCGA § 24-1-106 "mirror[s]" Rule 106 of the Federal Rules of Evidence, and the Supreme Court of Georgia has held that "where the new Georgia rules mirror their federal counterparts, it is clear that the General Assembly intended for Georgia courts to look to the federal rules and how federal appellate courts have interpreted those rules for guidance." *Parker v. State*, 296 Ga. 586, 592 (3) (a) (769 SE2d 329) (2015).

> prevents litigants from misleading the jury by presenting portions of prior statements taken out of context and is often "essential in order to arrive at the true drift, intent and meaning of what was said on the previous occasion." *Smalls v. State*, 105 Ga. 669, 671 (31 SE 571) (1898). Thus, "[i]t is the universal rule, in both civil and criminal cases, that, if part of a conversation is introduced, *all that is said in the same conversation which is relevant to the issue should be admitted*." *West v. State*, 200 Ga. 566, 569 (37 SE2d 799) (1946).

*Westbrook v. State*, 291 Ga. 60, 62 (2) (727 SE2d 473) (2012) (emphasis supplied); see also *Fitzgerald v. State*, 201 Ga. App. 361, 363 (2) (411 SE2d 102) (1991).

Further, the Eleventh Circuit has recently held that a trial court violated the rule of completeness and abused its discretion when it excluded only the exculpatory portions of a defendant's custodial statement concerning the cocaine found in his bag soon after he disembarked from an airplane. *United States v. Pacquette*, 557 Fed. Appx. 933, 936-937 (II) (11th Cir. 2014). The defendant had initially claimed ownership of everything in the bag, but denied knowledge of the cocaine once that contraband was found in the same bag. Id. at 934-935. The Eleventh Circuit concluded that the defendant's entire statement, including his denial, was "relevant to the primary issue in the case" – his "knowledge" of the cocaine found in the bag – and was also "relevant to the admitted portions of his statement" such that the trial

12

court abused its discretion in excluding the exculpatory portions of the statement and in barring cross-examination as to the inculpatory portions of the same. Id. at 937 (II) (B).

Here, as in *Pacquette*, the State proffered only a portion of Morales's single custodial interrogation (which lasted fifty-two minutes), and successfully argued for the exclusion of all other parts of that interrogation. But the earlier portions of Morales's statement remained "relevant" to the central issue before this jury: whether he committed the crime of rape. See *Westbrook*, 291 Ga. at 62 (2) ("if part of a conversation is introduced, all that is said in the same conversation which is *relevant* to the issue should be admitted") (emphasis supplied). The earlier parts of the interrogation also remained relevant on the subject of the voluntariness of his confession, which remained for the jury's consideration even after the denial of his motion to suppress his statement. See *Spence v. State*, 252 Ga. 338, 343 (3) (313 SE2d 475) (1984) ("the ultimate question of the voluntary character of [a defendant's] statement and its truthfulness is for the jury, and they are not bound by the trial court's earlier determination on this issue") (citation omitted). Because the earlier portions of Morales's transcribed statement were relevant as to both whether he committed the rape and whether the statement was voluntary, the trial court violated

13

the rule of completeness and abused its discretion when it excluded those earlier portions of that statement. See *Westbrook*, 291 Ga. at 62 (2) (affirming admission of a witness's entire statement, including its inculpatory portions, when it was relevant to defendant's self-defense claim); *Pacquette*, 557 Fed. Appx. at 937 (II) (B) (reversing the exclusion of portions of defendant's custodial statement as a violation of the rule of completeness and an abuse of discretion).[3]

(b) Even if the trial court erred in excluding most of Morales's statement, however, we must also consider whether that error was harmless – that is, whether it is highly probable that the error did not contribute to the jury's verdict and to the trial court's entry of judgment on that verdict. *Westbrook*, 291 Ga. at 63 (2); see also *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976) (adopting the "highly probable" test for harmless error).

---

[3] The State's citations to *Williamson v. United States*, 512 U. S. 596 (114 SCt 2431, 129 LE2d 476) (1994), and *United States v. Allen*, 416 Fed. Appx. 875 (11th Cir. 2011), are unavailing. *Williamson* does not mention the rule of completeness, let alone rule on it. See *Williamson*, 512 U. S. at 600-601 (II) (A). The statements at issue in *Allen* were merely those overheard by the arresting officers, and the government did not seek to introduce any transcribed statement. *Allen*, 416 Fed. Appx. at 883-884 (VIII) (when "[t]he government did not introduce any written or recorded statement," the defendant could not obtain admission of his exculpatory written statement under the rule of completeness).

Morales points out that for most of the duration of his custodial statement, he denied that he had intercourse with the victim. Morales also points to his acquittal on the kidnapping charge as support for his contention that the evidence against him was short of overwhelming. The State's evidence authorized the jury to conclude, however, that Morales approached the victim at the club, wrote his name and phone number on her hand, put his hand over her mouth and threatened her, had intercourse with her, ejaculated inside her, and fled the scene even before the approach of police. Morales also fails to note that the admission of the earlier portions of his statement would have led the jury to consider that by his own account, he remained at the scene after the three other men told him that they were "going to rape" the victim and after Zurdo and Mencho actually did so – in short, that, as he himself put it, he "just stayed there watching." Further, Morales never suggested that he took any action to help the victim as she was raped by Zurdo and Mencho. The erroneous exclusion of this highly inculpatory evidence makes it impossible for Morales to show that he was harmed by the trial court's error in excluding the arguably exculpatory sections of his statement.

Taken together, the admitted and improperly excluded evidence showed overwhelmingly that Morales was guilty of rape, whether principally or as a party to

15

the crime, rendering it highly probable that any error in failing to admit the earlier portions of his statement did not contribute to the jury's verdict. See *Cole v. State*, 279 Ga. App. 219, 221 (1), 225 (8) (a) (630 SE2d 817) (2006) (erroneous admission of similar transaction evidence was harmless in light of overwhelming evidence that defendant got the victim drunk, held her in a car, and raised no objection while a co-defendant raped her such that defendant was guilty as a party to the crime of rape); *Westbrook*, 291 Ga. at 63 (2) (any possible error in admitting hearsay evidence of defendant's guilt under the rule of completeness was harmless in light of other, overwhelming evidence); *Jackson v. State*, 262 Ga. App. 451, 454 (3) (585 SE2d 745) (2003) (failure to admit defendant's entire statement under OCGA § 24-3-38 was harmless where excluded evidence was cumulative of other evidence admitted at trial), overruled on other grounds, *Carter v. State*, 266 Ga. App. 691, 693 (2) (598 SE2d 76) (2004), but cited with approval in *Mitchell v. State*, 293 Ga. 1, 2-3 (2) (742 SE2d 454) (2013). Similarly, in light of our holding in Division 2, and having reviewed the improperly excluded portions of Morales's statement, we cannot say that a jury considering the entire statement would likely have concluded that it was not voluntarily made. See *Colton v. State*, 296 Ga. 172, 180 (2) (766 SE2d 38) (2014)

(any error in admitting evidence of defendant's non-custodial statement was "harmless in light of other properly admitted evidence at trial").

For all these reasons, the trial court did not err when it denied Morales's motion for new trial.

*Judgment affirmed. Andrews, P. J., and Miller, P. J., concur.*