## S07A1456. NAVARRETE v. THE STATE.
### (656 SE2d 814)

THOMPSON, Justice.

Mario Roberto Navarrete was convicted of felony murder, aggravated assault, and other crimes arising from the stabbing death of Richard Davis.[1] On appeal, Navarrete asserts that the evidence was constitutionally insufficient to support his convictions, that the trial court improperly admitted certain hearsay testimony under the necessity exception, and that he was denied effective assistance of trial counsel. Finding no reversible error, we affirm.

Viewed in a light most favorable to the verdict, the evidence established that Navarrete, his co-indictees Jacob Burgoyne, Douglas Woodcoff, and Alberto Martinez, as well as the victim, Richard Davis, served together as infantrymen in the United States Army.[2]

The crimes occurred soon after the five men returned to Fort Benning, Georgia, from a six-month deployment to Iraq and Kuwait. On the evening in question, Martinez drove Navarrete, Burgoyne,

---

[1] The crimes were committed on July 12, 2003. On February 17, 2004, Navarrete was indicted along with Alberto Martinez, Jacob Burgoyne, and Douglas Woodcoff. Navarrete was charged with malice murder, felony murder while in the commission of an aggravated assault, aggravated assault, possession of a knife during the commission of a crime, armed robbery, and concealing the death of another. Appellant and Martinez proceeded to a joint jury trial which commenced on January 23, 2006. On January 27, 2006, the jury acquitted appellant of malice murder and armed robbery but convicted him of the remaining charged offenses. Martinez was convicted of all charges except armed robbery. Navarrete was sentenced on the same day to life imprisonment plus 20 concurrent years for aggravated assault and consecutive terms for weapon possession and concealing a death. A motion for new trial was filed on February 7, 2006, amended on November 21, 2006, and denied on January 5, 2007. A motion for out-of-time appeal was granted on May 25, 2007 and a notice of appeal was filed on the same day. The case was docketed in this Court on June 11, 2007. Oral argument was heard on October 10, 2007.

[2] Burgoyne pled guilty to voluntary manslaughter and other charges, and was sentenced to 20 years in prison; Woodcoff pled guilty to the only charge for which he was indicted, concealing the death of another, and was sentenced to probation. Both testified for the State in the joint trial against Navarrete and Martinez.

Woodcoff, and Davis to a Hooters restaurant to celebrate their homecoming. On the way there, Martinez showed the others a new knife which he kept in the console of his car. The five men spent the next few hours at the restaurant having dinner and consuming several pitchers of beer. Martinez then drove them to an adult entertainment club. At some point in the evening, the club's bouncer approached Woodcoff and Martinez and asked them to remove Davis because he was visibly intoxicated. Woodcoff and Martinez escorted Davis to Martinez's car, placed him in the back seat, and returned to the club where they continued drinking. Approximately two hours later, the four men left the club and returned to the car. Burgoyne pulled Davis out of the back seat and without provocation, began to beat him. The others stood by but made no attempt to stop the fight. Subsequently, the five men again got into Martinez's car; Navarrete and Burgoyne sat in the back seat with Davis between them, and Woodcoff was in the front passenger seat. Martinez drove to a rural, wooded area about 20 minutes away. During the drive, Navarrete and Burgoyne continued to beat Davis, despite Woodcoff's entreaties for them to stop.

Martinez stopped the car, and ordered everyone to get out. Martinez, Burgoyne, and Navarrete formed a circle around Davis. Burgoyne struck Davis several times and Davis began to walk toward Martinez and Navarrete. Martinez then produced a knife and stabbed Davis, causing him to fall to the ground. Navarrete and Burgoyne urged Martinez to stop the attack but Martinez disregarded their pleas; Burgoyne then walked back to the car and Navarrete followed. Moments later, Davis got to his feet but Martinez grabbed him around the neck and resumed stabbing him. Davis fell to his knees and the attack continued with Martinez inflicting a minimum of 33 knife wounds. The others observed but did nothing to aid Davis. After Davis stopped moving, Martinez and Burgoyne placed his body further into the woods and removed his identification. The four men returned to the car and Martinez drove a short distance to a clearing where they made the decision to burn the body. Martinez drove to a convenience store and Burgoyne collected money from the others to purchase lighter fluid and matches. Upon returning to the crime scene, Martinez and Burgoyne poured lighter fluid on the body and set it on fire; Navarrete and Woodcoff remained in the car. Martinez then drove the men to their barracks at Fort Benning.

Several days later Martinez returned to the crime scene where he detected the odor of the victim's decaying body and he decided to bury it. He, along with Navarrete and Burgoyne, returned to the scene that night supplied with latex gloves, a shovel, and a change of clothes. Navarrete stood lookout while Burgoyne attempted to bury the body.

1. Navarrete asserts that the evidence only establishes his "mere presence" during the commission of the offense of aggravated assault and felony murder predicated on aggravated assault. Thus, he claims that the evidence was insufficient to support those convictions.

"Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." OCGA § 16-2-20 (a). " 'While mere presence at the scene of a crime is not sufficient evidence to convict one of being a party to a crime, criminal intent may be inferred from presence, companionship, and conduct before, during and after the offense.' [Cit.]" *Strozier v. State*, 277 Ga. 78, 79 (2) (586 SE2d 309) (2003). See also *Byrum v. State*, 282 Ga. 608 (1) (652 SE2d 557) (2007). Compare *James v. State*, 260 Ga. App. 350 (1) (579 SE2d 750) (2003) (evidence insufficient where defendant was not present during the crimes and conduct before and after did not support the inference that he knew of the plan and shared in the criminal intent).

Navarrete's intent to commit the crimes may be inferred from evidence that he assaulted Davis in the back seat of the car during the 20-minute drive to the wooded area, that he participated in the plot to burn the body, that he did not attempt to report the crime in the days following the murder even when questioned by the military authorities, and that he stood lookout while Martinez and Burgoyne buried the body days later. In addition, Navarrete was aware in advance of the stabbing that Martinez was armed with a knife and he stood by and watched Martinez commit an aggravated assault on Davis before he made any effort to intervene.

The evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Navarrete was guilty of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Over Navarrete's hearsay objection, Army medic Edward Wulff was permitted to testify about an incident that occurred in Iraq just prior to the unit's redeployment to Fort Benning. Wulff testified that he was attached to the same platoon as Navarrete and Davis and that he and Davis had become good friends. One night Davis came to his barracks and awakened him seeking treatment for a wound to the back of his hand. Wulff testified that he asked Davis how he injured his hand, and that Davis replied he had been drinking with Martinez and Navarrete and they decided to become "blood brothers"; Martinez and Navarrete hit him and choked him; and Davis thought they were going to kill him. It was also elicited from Wulff that Davis was extremely intoxicated when he made these remarks, and when Wulff advised Davis to report the incident, Davis refused and stated that if anyone were to ask him about it, he would lie and say he fell and caught his hand in a thorn bush. The next morning, Wulff sought out

Martinez and Navarrete and inspected their hands for injuries, but observed none. Wulff did not report the injury or the alleged threat because he thought it was just a "drunk thing" and not really serious. The trial court admitted the evidence under the necessity exception to the hearsay doctrine.[3]

> In order for hearsay to be admitted under the necessity exception, two requirements must be satisfied: "necessity" and "particularized guarantees of trustworthiness." [Cits.] "Necessity" is demonstrated when the declarant is deceased, when the statement is shown to be relevant to a material fact, and when the statement is more probative of the material fact than other evidence that may be produced and offered. [Cit.] The requirement of "particularized guarantees of trustworthiness" is satisfied when the declaration is coupled with "circumstances which attribute verity to [the declaration]."

*Culmer v. State*, 282 Ga. 330, 331 (2) (647 SE2d 30) (2007). Without deciding whether the hearsay was "necessary" under the foregoing test, we hold that the declarations lacked the requisite component of "trustworthiness" and, therefore, should not have been admitted under the necessity exception.

In evaluating the trustworthiness element, the trial court should look to the totality of the circumstances surrounding the making of the declaration. *Belmar v. State*, 279 Ga. 795 (2) (621 SE2d 441) (2005). Our review of the record persuades us that the State, as proponent of the hearsay, failed to demonstrate sufficient indicia of trustworthiness for the statements to be admissible under the necessity exception. While a close relationship between Davis and Wulff may militate in favor of admission, see *Turner v. State*, 281 Ga. 647 (3) (a) (641 SE2d 527) (2007), that one factor alone is not dispositive, especially where the totality of the circumstances dictate otherwise. See *Carr v. State*, 267 Ga. 701 (3) (482 SE2d 314) (1997), overruled on other grounds, *Clark v. State*, 271 Ga. 6 (5) (515 SE2d 155) (1999). See also Paul S. Milich, Georgia Rules of Evidence, 2d ed., § 19.32.

Wulff acknowledged that Davis was intoxicated when he made the statements, and Wulff dismissed the alleged threats on Davis' life as the ramblings of a "drunk" person. See *Messick v. State*, 276 Ga. 528 (3) (580 SE2d 213) (2003) (statements to a self-described acquaintance after an all-day drinking session lacked sufficient guarantees of

---

[3] Because of the non-testimonial nature of the hearsay declarations, *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004) is not implicated.

trustworthiness and were inadmissible under the necessity exception). See also *United States v. Two Shields*, 497 F3d 789 (8th Cir. 2007) (extreme intoxication is one consideration in the totality of the circumstances evaluation of the reliability of a hearsay statement). Since Davis had consumed the alcohol at the time that Navarrete and Martinez made the alleged threats, it is also reasonable to infer that Davis was intoxicated when he witnessed the events, thus undermining his credibility as a witness. See generally *Teat v. State*, 237 Ga. App. 867 (2) (a) (516 SE2d 794) (1999) ("any possible state of intoxication goes to the credibility of the witness"), citing *Whitus v. State*, 222 Ga. 103 (2) (149 SE2d 130) (1966), rev'd on other grounds in *Whitus v. Georgia*, 385 U. S. 545 (87 SC 643, 17 LE2d 599) (1967).

In addition, Davis told Wulff that he had no compunctions about lying to his chain of command concerning the nature of his injury, thus demonstrating his lack of veracity. "The test is whether the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility." (Punctuation omitted.) *Yancey v. State*, 275 Ga. 550, 553 (2) (570 SE2d 269) (2002).[4] Here, the truthfulness of the statement could have been challenged had the declarant been subject to cross-examination. Although a trial court's determination of trustworthiness will not be disturbed absent an abuse of discretion, *Culmer*, supra at 331 (2), we conclude under the totality of the circumstances, that Davis' declarations to Wulff were not "coupled with circumstances which attribute verity to [them]," (punctuation omitted) *Belmar*, supra at 797 (2), and thus are inherently untrustworthy.

We next must assess whether the error in admitting the hearsay portion of Wulff's testimony was harmless. "The erroneous admission of hearsay testimony is harmless where it is cumulative of legally admissible evidence of the same fact, where it does not touch on the central issue of the case, or it could not have contributed to the verdict in light of eyewitness testimony regarding the crime." *Myers v. State*, 275 Ga. 709, 713 (2) (572 SE2d 606) (2002). See also *White v. State*, 273 Ga. 787 (4) (546 SE2d 514) (2001) (erroneous admission of hearsay is harmless where there is a positive identification and other corroborative circumstances). According to the account of two eyewitnesses, Navarrete was implicated as a party to the crimes for which he was convicted. While, under OCGA § 24-4-8, the testimony of a single accomplice in a felony prosecution is not sufficient to establish a fact, "the testimony of one accomplice may be used to corroborate that of another." *Williams v. State*, 280 Ga. 584, 586 (1) (630 SE2d 370) (2006). In addition, Navarrete's participation and

---

[4] Decided prior to *Crawford v. Washington*, supra.

criminal intent could be adduced from his conduct before, during and after the events. *Byrum*, supra at 608 (1). Under the circumstances, we hold that the hearsay evidence could not have contributed to the verdict. Id.

3. Navarrete submits that he was denied constitutionally effective assistance of trial counsel because counsel failed to adequately investigate the case, and failed to offer the testimony of two soldiers who allegedly were present during the "blood brothers" incident in Iraq and who could have rebutted Wulff's hearsay testimony that Navarrete had threatened Davis.

> To prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficiency so prejudiced defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different.

*Patel v. State*, 279 Ga. 750, 751 (620 SE2d 343) (2005), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

At the hearing on the motion for new trial, trial counsel's physician testified that several months prior to Navarrete's trial, counsel had been diagnosed with cancer and that he began a course of chemotherapy and received treatments both prior to and after the date of trial; that contemporaneous with Navarrete's trial, counsel reported experiencing a side effect of chemotherapy which causes peeling of the skin on the hands and feet; but that counsel did not complain about a lack of mental acuity until eight months after the conclusion of Navarrete's trial. Trial counsel testified that his concentration and ability to write were compromised during the trial. When asked about his knowledge of the two potential witnesses to the "blood brothers" incident, counsel stated that in a pretrial interview Navarrete named the two men as potential character witnesses, and that at some time during trial Navarrete told him the two were present when he cut his hand "and could testify to that." Counsel could offer no explanation for his failure to follow up on that information.

Sergeant Pruitt, one of the two soldiers who allegedly witnessed the "blood brothers" incident, testified for the defense at the motion hearing.[5] He stated that Martinez and Davis had gotten into an altercation at the time of the incident and that Navarrete tried to stop it. Although Pruitt acknowledged on cross-examination that he had

---

[5] The second soldier had left the service and could not be located.

been interviewed numerous times after Davis' murder by both military and civilian investigators and was expressly asked if he knew of any problems with anyone in his platoon, he never disclosed the "blood brothers" incident. Assistant District Attorney Jackson, who participated in the trial of the case, was called to rebut Pruitt's hearing testimony. ADA Jackson testified that Pruitt, who had been subpoenaed as a witness for the State at trial (as were other members of the platoon), was interviewed by him prior to trial and asked what if anything he knew about the case and why someone may have been intent on harming Davis. Pruitt replied, "I don't know anything. I don't even know why I'm here. . . . Everything I know is in the statements you've got." And as a result, Pruitt was excused from his subpoena.

"In ruling on an ineffectiveness claim, this Court need not analyze the deficient performance prong if the Court determines the prejudice prong has not been satisfied." *Fortson v. State*, 280 Ga. 435, 436 (2) (a) (629 SE2d 798) (2006). As in *Fortson*, "[e]ven if the witness had testified exactly as [Navarrete] claims, [Navarrete] has not demonstrated that there is a reasonable probability that the outcome of the trial would have been different, as the testimony would not have exonerated him." Id. Furthermore, Pruitt's testimony concerning the incident differed from Navarrete's trial testimony in several material respects, including his identification of the persons who were present, and the area of the injury to Davis' hand. Thus, had Pruitt been called as a witness at trial, his testimony actually may have been detrimental to the defense. Accordingly, we hold that the prejudice prong of *Strickland* has not been met.[6]

4. Finally, we reject Navarrete's claim that the trial court committed reversible error by allowing ADA Jackson, who participated as co-counsel for the State in the new trial hearing, to testify in violation of the rule of sequestration. After a proffer, the court allowed Jackson to testify to impeach the testimony of Sergeant Pruitt. A violation of the rule of sequestration generally does not affect the admissibility of the testimony, but may impact on the credibility of the offending witness. *Rakestrau v. State*, 278 Ga. 872 (4) (608 SE2d 216) (2005). We find no abuse of discretion in the trial court's ruling especially in light of the fact that this was a non-jury matter. Id.

*Judgment affirmed. All the Justices concur.*

---

[6] In addition, Navarrete's unsubstantiated claim that trial counsel was ill-prepared is belied by the evidence and by counsel's submitted time records documenting his pretrial preparation.

DECIDED JANUARY 28, 2008 —
RECONSIDERATION DENIED FEBRUARY 25, 2008.

*Alston & Bird, Michael L. Brown, Yetter & Warden, Gregory S. Coleman, Edward C. Dawson,* for appellant.

*J. Gray Conger, District Attorney, Stacey S. Jackson, David R. Helmick, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Robin J. Leigh, Assistant Attorney General,* for appellee.