## A08A2263. ORTIZ v. THE STATE.
### (672 SE2d 507)

ELLINGTON, Judge.

A Gwinnett County jury found Ricardo Ortiz guilty beyond a reasonable doubt of two counts of child molestation, OCGA § 16-6-4 (a).[1] Ortiz appeals from the denial of his motion for new trial, contending the State presented insufficient evidence of venue, the trial court erred in admitting certain evidence, and trial counsel provided ineffective assistance. Finding no error, we affirm.

1. Ortiz argues that the State failed to prove venue by showing that the alleged acts of child molestation occurred in Gwinnett County.[2]

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.

(Citations omitted.) *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004). The standard of *Jackson v. Virginia* is met if the evidence is sufficient for any rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crime charged. *Clark v. State*, 275 Ga. 220, 221 (1) (564 SE2d 191) (2002).

> Generally, a criminal action must be tried in the county in which the crime was committed, and the [S]tate may establish venue by whatever means of proof are available to it, including direct and circumstantial evidence. Whether the evidence as to venue satisfied the reasonable-doubt standard was a question for the jury, and its decision will not be set aside if there is any evidence to support it.

(Citations, punctuation and footnotes omitted.) *Mahone v. State*, 293

---

[1] The jury acquitted Ortiz of one count of aggravated child molestation, OCGA § 16-6-4 (c).

[2] In Count 2, the State charged Ortiz with child molestation for exposing his penis to G. R. In Count 3, the State charged Ortiz with performing an act of child molestation by "placing his penis on [the] vagina" of S. T.

Ga. App. 790, 793-794 (2) (668 SE2d 303) (2008).

Viewed in favor of the jury's verdict, the evidence in this case shows the following facts. Ortiz moved to Gwinnett County from Mexico in 1993. In 1998, Ortiz started living with his girlfriend and her two daughters, G. R. and S. T.[3] G. R. was born in August 1993, and S. T. was born in December 1997, so the girls were about five or six years old and one year old, respectively, when they began living with Ortiz. G. R. testified that she thought she went to a Gwinnett County school when she lived with Ortiz.

According to G. R., when she was about six or seven years old, she was taking a bath when Ortiz got her out of the bathtub and took her into a bedroom. On the television, a movie was playing in which naked people were having sex. Ortiz's pants were halfway down and G. R. could see his "front private" part. Ortiz asked G. R. if she would like to do what the people in the movie were doing, and she indicated that she did not. Ortiz then told her to go back to the bathroom. G. R. did not tell her mother what had happened because she was afraid that her mother would not believe her.

G. R. also testified that, in July 2002, just before she turned nine years old, Ortiz was taking a shower and called to her, asking her to bring him some soap. She knocked on the bathroom door and he told her to come in. When she went in, she saw him standing naked. Later that day, G. R. was taking a shower and Ortiz came into the bathroom and started touching her. Ortiz took her into her mother's bedroom and laid her on the bed. They were both naked, and Ortiz started licking her on her "front private part." G. R. could see Ortiz's "private part," and he asked her to lick it, but she refused.

In 2002, the State removed G. R. from her home in Gwinnett County based upon allegations of neglect. That same year, G. R. told her foster mother that she had been sexually abused by her step-father, Ortiz, and that she thought S. T. may have been abused, also. The foster mother contacted the Gwinnett County Department of Family and Children Services ("DFACS"), which in turn contacted the Gwinnett County Police Department's Special Victims Unit. A Gwinnett County police officer interviewed G. R. in January 2003. G. R. told him about both times Ortiz sexually abused her, and she described Ortiz's penis as "standing up" during both incidents. According to the officer, G. R. told him that the sexual abuse occurred at a house located at 204 Tolan Court, which the officer testified was in Gwinnett County.

As for the allegations involving S. T., she testified at trial that, when she was around five years old, Ortiz touched her on her legs in

---

[3] Between 1998 and the time of trial, the girls' mother gave birth to Ortiz's two sons.

a way that made her feel uncomfortable. She said this happened in her bedroom in her house. A therapist who started treating S. T. in September 2003 testified that S. T. told her that Ortiz had touched her private parts without her clothes on and that this had happened "a lot." The therapist notified DFACS and the Gwinnett County Police Department about S. T.'s statements. A Gwinnett County detective then interviewed S. T. in April 2004. The State played an audiotape of the interview at trial. On the tape, S. T. said that Ortiz had touched her "private part" with his "private" while she was lying on her back with her clothes off in her bedroom in "Building 11," where she lived with her sister, brothers, mother and Ortiz. According to the detective, when he asked S. T. to show him where Ortiz had touched her, she circled the vaginal area on a drawing, and she circled the penis on another picture when asked what part of Ortiz's body had touched hers. The detective also testified that he knew that "Building 11" was located on Tolan Court, that the residence on Tolan Court "was the only place [S. T.] had lived with her sister, brothers, and her mother and [Ortiz,]" and that the residence was located in Gwinnett County.

Although Ortiz contends on appeal that there was insufficient evidence to prove venue on the child molestation charges, we conclude that the evidence presented was sufficient to support the jury's finding that the acts occurred in Gwinnett County, as charged in the indictment, beyond a reasonable doubt. "[S]ince venue is a question for the jury, its decision will not be set aside if there is any evidence to support it." (Footnote omitted.) *Green v. State*, 254 Ga. App. 549, 550 (562 SE2d 835) (2002). Even though the children's testimony was not entirely consistent and they could not remember some of the details surrounding the acts of molestation, particularly those that occurred when they were very young, the jury is solely responsible for judging the credibility of the witnesses, even on the issue of venue. Id. In addition, the record shows that the court charged the jury that they were responsible for judging the credibility of the witnesses and resolving conflicts in the evidence, read the indictment to the jury, instructed the jury that the State was required to prove venue beyond a reasonable doubt, and sent the indictment out with the jury for use during deliberations. Under these circumstances, we find that Ortiz has failed to demonstrate reversible error.

2. Ortiz contends the trial court improperly admitted certain testimony of a sexual assault nurse who examined S. T. According to the nurse, before the examination, S. T. told her that Ortiz had touched her under her clothes and that it felt like a "pinch." The nurse testified that the examination showed that parts of the child's hymen were damaged or missing and that the injuries could have

been caused by penetration of a penis, finger or "any penetrating object" into the child's vagina.

Ortiz argues that the indictment did not charge him with any penetration of S. T.'s vagina, but only with "placing his penis on her vagina," and that there was no evidence of penetration other than the nurse's testimony. Therefore, he contends the court abused its discretion in admitting the evidence regarding damage to S. T.'s hymen because it was irrelevant and prejudicial. We disagree.

> Any evidence is relevant which logically tends to prove or disprove a material fact which is at issue in the case, and every act or circumstance serving to elucidate or to throw light upon a material issue or issues is relevant. The trial court has wide discretion in determining relevancy and materiality, and furthermore, where the relevancy or competency is doubtful, the evidence should be admitted, and its weight left to the determination of the jury.

(Citations and punctuation omitted.) *Pittman v. State*, 178 Ga. App. 693 (2) (344 SE2d 511) (1986). In this case, Ortiz has failed to show that the court abused its discretion in admitting evidence that tended to prove that Ortiz placed his penis "on" the child's vagina simply because that evidence *also* indicated that some penetration may have occurred at that time or that Ortiz *also* may have touched the child's vagina with his hand, even though the State did not charge Ortiz with those crimes. See id.; see also *Simpson v. State*, 234 Ga. App. 729, 730 (1) (507 SE2d 860) (1998) ("Even though a defendant is not charged with every crime committed during a criminal transaction, every aspect of it relevant to the crime charged may be presented at trial.") (citations and punctuation omitted). The determination of the weight to be accorded the evidence was for the jury. *Pittman v. State*, 178 Ga. App. at 693 (2).

3. Ortiz argues that the trial court improperly admitted hearsay evidence. Specifically, he complains that the court allowed the children's therapist to testify that, when the DFACS caseworker initially brought the children in for counseling, the caseworker told her that G. R. had made an outcry alleging that she had been sexually abused and that S. T. may also have been abused.

The record shows that DFACS referred the children to the therapist for counseling. The therapist was not involved in conducting forensic interviews with the children to assist in the investigation of their allegations of sexual abuse. The court allowed the therapist to testify about what the caseworker told her for the limited purpose of explaining why the children had been referred to her and what she did with the girls during therapy.

Pretermitting whether the therapist's testimony constituted inadmissible hearsay, the admission of such testimony is harmless as a matter of law when it is cumulative of other legally admissible evidence of the same fact. *Navarrete v. State*, 283 Ga. 156, 160 (2) (656 SE2d 814) (2008). In this case, before the therapist testified, both girls and G. R.'s foster mother had already testified about the sexual abuse allegations and about DFACS placing the girls in foster care, and the girls had testified that they had been going to see the therapist on a regular basis. Therefore, the admission of the statement at issue was harmless. Id.

4. Ortiz contends his trial counsel was ineffective for failing to object to the admission of improper character evidence and for failing to move for a directed verdict based upon the State's failure to prove venue.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984)[.] The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. [As the appellate court, we] accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003). "As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." (Citation and punctuation omitted.) *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001).

(a) Ortiz complains that counsel was ineffective for failing to object to improper character evidence, specifically, acts of domestic violence allegedly perpetrated by Ortiz against the two girls and their mother. The transcript showed that G. R. testified that Ortiz hit her, her sister, and her mother, and G. R. said she was terrified of him. The girls' therapist also testified that both girls told her that Ortiz had beat them and their mother. According to the therapist, witnessing the domestic violence by Ortiz against the mother was especially traumatic to S. T. In addition, the nurse who examined S. T. testified that the child told her that Ortiz had hit her with a belt on her stomach, hands and legs, and S. T. told the detective the same

thing during their interview.

At the hearing on Ortiz's motion for new trial, counsel testified that he intentionally did not object to the evidence of domestic violence because his defense theory was that the children had made up their allegations of sexual abuse because Ortiz was a strict disciplinarian and spanked the children, and they wanted to get Ortiz out of the house so that S. T.'s father would move back in with them. According to counsel, "we were trying to come up with an explanation as to why the children would make statements like they made" regarding the sexual abuse by Ortiz.

Thus, counsel's testimony clearly demonstrates that his failure to object to the domestic violence evidence was not an oversight but was, instead, the result of a strategic decision. Consequently, Ortiz is unable to support his claim that counsel's failure to act constituted ineffective assistance. *Grier v. State*, 273 Ga. at 365 (4).

(b) As for Ortiz's contention that counsel was ineffective for failing to move for a directed verdict on the basis of venue, counsel testified at the motion for new trial hearing that he did not make such a motion because he was "satisfied that the [S]tate had established venue by testimony of one or both of the officers that testified. I don't think that there was ever any testimony indicating that the family lived anywhere other than Gwinnett County." Further, given our ruling in Division 1, supra, that the State presented sufficient evidence of venue to support the jury's conclusion that venue was proper, Ortiz's contention that counsel was ineffective for failing to move for a directed verdict on that basis must fail.

*Judgment affirmed. Miller, C. J., and Blackburn, P. J., concur.*

DECIDED JANUARY 14, 2009 — 

*Lucas O. Harsh*, for appellant.

*Daniel J. Porter, District Attorney, Tracie H. Cason, Assistant District Attorney*, for appellee.

