**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 20, 2016**

# In the Court of Appeals of Georgia

A16A0172. BLACKWELL v. THE STATE.

PHIPPS, Presiding Judge.

A jury found Ryan Blackwell guilty of manufacturing methamphetamine in the presence of a child. He appeals, asserting that the trial court erred in failing to suppress his custodial statement to police. He also argues that he received ineffective assistance of counsel at trial. For reasons that follow, we affirm.

Viewed favorably to the jury's verdict,[1] the evidence shows that on September 17, 2010, an investigator with the Richmond County Sheriff's Office received a tip that Blackwell was manufacturing methamphetamine out of a Richmond County home. The investigator and his partner knocked on the front door of the home, which was answered by a resident, and asked for Blackwell. The resident led them to the

---

[1] *Smith v. State*, 291 Ga. App. 535 (662 SE2d 305) (2008).

garage, where they found Blackwell, his wife, the Blackwells' three-month-old daughter, and another man. As he entered the garage, the investigator detected a strong chemical odor and saw "an active meth lab cooking" a few feet from where Blackwell and the other occupants were sitting.

The investigator and his partner removed everyone from the garage and obtained permission to search the premises. Inside the garage, they found a black bag containing methamphetamine, as well as equipment and other items used to manufacture and sell methamphetamine. The investigator arrested Blackwell, who indicated that he lived at the house. Blackwell also stated that although he knew methamphetamine was being manufactured in the garage, it did not belong to him. At trial, Blackwell offered evidence that he lived with his mother, rather than at the residence where he was arrested, and that he was not involved with manufacturing or selling methamphetamine. Without dispute, however, the evidence showed that Blackwell's wife and child lived at the residence, and personal property belonging to Blackwell was located there.

Based on the evidence presented, the jury found Blackwell guilty of manufacturing methamphetamine in the presence of a child.[2] As to a second charge of trafficking in methamphetamine, the jury found him not guilty.

1. Blackwell argues that the trial court erred in admitting his statement to the investigator that he knew methamphetamine was being manufactured in the garage a few feet from his three-month-old child. According to Blackwell, he made the statement in response to threats, undermining its voluntariness and admissibility.

Pursuant to former OCGA § 24-3-50,[3] a confession is admissible if it is "made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury." Before admitting a confession, the trial court must consider the totality of the circumstances and assess whether the defendant made the statement

---

[2] See OCGA § 16-5-73 (b) (1) ("Any person who intentionally causes or permits a child to be present where any person is manufacturing methamphetamine . . . shall be guilty of a felony and, upon conviction thereof, shall be punished by imprisonment for not less than two nor more than 15 years.").

[3] Because Blackwell's trial took place in 2012, he was tried under our old Evidence Code. See Ga. L. 2011, pp. 99, 214, § 101. Former OCGA § 24-3-50 appears in the new Evidence Code as OCGA § 24-8-824.

3

voluntarily.[4] We will not disturb the trial court's determination as to voluntariness absent clear error.[5]

The trial court held a *Jackson v. Denno*[6] hearing before admitting Blackwell's statement. At the hearing, the investigator testified that he arrested Blackwell, read him *Miranda* warnings, and obtained a signed waiver of counsel from him. Blackwell then agreed to be interviewed at the scene, ultimately stating that he knew methamphetamine was being cooked in the garage, but that it did not belong to him. According to the investigator, he did not threaten Blackwell or promise him anything to obtain the statement. He did, however, ask whether Blackwell wanted to claim ownership of the drugs, and he possibly stated that Blackwell's child might be taken into state custody. The investigator also told Blackwell that "there[] [was] a good chance" Blackwell's wife would be going to jail, given her presence with the child in front of an active methamphetamine lab.

Following the investigator's testimony, Blackwell presented evidence from Tina Drake, who was in the house during Blackwell's interview. According to Drake,

_____

[4] *Smith*, supra at 536-537.

[5] Id. at 537.

[6] 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

4

the investigator informed Blackwell that "it was time to man up and that if [Blackwell] didn't tell [the investigator] everything that [the investigator] found in that house belonged to him that [the investigator] was going to take his wife to jail and his child to [the Georgia Division of Family and Children Services]." Drake testified that the investigator also threatened to "tear . . . apart" Blackwell's mother's home, where Blackwell claimed to be living. She further claimed that Blackwell "raised [his hands] up and said all right, whatever you find belongs to me."

After hearing the evidence, the trial court concluded that Blackwell gave his statement freely and voluntarily, without any hope of benefit or fear of injury. We find no error. Although Blackwell claims that the investigator induced the statement by threatening his family members, the trial court was authorized to find, based on the investigator's testimony, that the investigator simply informed Blackwell that his wife could be arrested and that his child – who resided in a home where methamphetamine was being manufactured – might be taken into state custody.[7]

---

[7] Blackwell's wife was, in fact, arrested, indicted for trafficking in methamphetamine (count one) and manufacturing methamphetamine in the presence of a child (count two), and tried with Blackwell. The jury found her not guilty on count one and failed to reach a verdict on count two, resulting in a mistrial as to that charge.

As we have explained, "a statement by police that makes the defendant 'aware of potential legal consequences' is 'in the nature of a mere truism' that does not constitute a threat of injury or promise of benefit" within the meaning of former OCGA § 24-3-50.[8] Blackwell was advised of his *Miranda* rights, waived his right to counsel, and agreed to speak with the investigator. During the conversation, the investigator told Blackwell about the legal consequences of his arrest and the police investigation, and Blackwell conceded that he knew about the active methamphetamine lab in the house. The trial court did not err in finding that Blackwell freely and voluntarily made this statement to police.[9]

---

[8] *Smith*, supra at 537.

[9] See id. at 537-538 ("An indication by the police that they are considering charging a defendant's girlfriend or wife with a crime does not necessarily render a confession involuntary.") (footnote omitted); *Rubia v. State*, 287 Ga. App. 122, 123 (650 SE2d 797) (2007) (officer's statement to defendant that "the police as a matter of policy placed children in the custody of . . . DFACS upon the arrest of their parents was a mere 'truism' or recounting of fact rather than a threat of injury or promise of benefit") (punctuation omitted); *Anderson v. State*, 224 Ga. App. 608, 610 (1) (481 SE2d 595) (1997) (officer's statement that burglary suspect's girlfriend might be charged as an accessory "was a mere 'truism' or recounting of facts rather than a threat of injury or promise of benefit" and thus did not undermine voluntariness of suspect's confession). See also *Butler v. State*, 292 Ga. 400, 403 (2) (738 SE2d 74) (2013) ("Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of the defendant's statement at a *Jackson v. Denno* hearing will be upheld on appeal.") (citation omitted).

2. Blackwell also alleges that he received ineffective assistance of counsel at trial. Specifically, he argues that trial counsel was ineffective because, although counsel presented Tina Drake's testimony at the *Jackson v. Denno* hearing, he did not call her as a trial witness to testify about the investigator's alleged "threats."[10] To prevail on this claim, Blackwell "must show that counsel's performance was deficient and that the deficiency so prejudiced [the defense] that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[11] A defendant must demonstrate both deficiency and prejudice to establish ineffective assistance, and we "need not analyze the deficient performance prong if [we] determine[] the prejudice prong has not been satisfied."[12]

At the hearing on Blackwell's motion for new trial, trial counsel asserted that his failure to call Drake as a trial witness "was an oversight" and did not constitute trial strategy. Drake testified at the *Jackson v. Denno* hearing, however, that she heard

---

[10] Although the trial court determined that Blackwell's statement was voluntary and thus admissible, the issue of voluntariness had to be "presented to the jury for consideration." *Hogan v. State*, 330 Ga. App. 596, 600 (2) (768 SE2d 779) (2015).

[11] *Navarrete v. State*, 283 Ga. 156, 161 (3) (656 SE2d 814) (2008) (citations omitted).

[12] Id. at 162 (3).

7

Blackwell claim ownership of "whatever" police found in the house, which included methamphetamine. And trial counsel admitted that such testimony would not have helped Blackwell at trial. Moreover, the record shows that counsel cross-examined the investigator at trial regarding his interview with Blackwell, eliciting evidence that the investigator told Blackwell his child might be taken into state custody and his wife might go to jail.

Had Drake testified at trial, therefore, portions of her testimony likely would have been cumulative of evidence obtained from the investigator on cross-examination. More importantly, her testimony might have harmed Blackwell's apparently successful claim that the methamphetamine found in the house did not belong to him.[13] Pretermitting whether trial counsel should have called this witness, Blackwell cannot show a reasonable likelihood that, absent the alleged deficiency, the

---

[13] As noted above, the jury, which heard only that Blackwell had disavowed ownership of the drugs, acquitted him of trafficking in methamphetamine.

outcome of the trial would have been favorable to him.[14] Accordingly, this claim of error lacks merit.

*Judgment affirmed. Dillard and Peterson, JJ., concur.*

---

[14] See *Navarrete*, supra at 162 (3) (counsel's failure to call witness at trial did not prejudice defendant where witness's "testimony actually may have been detrimental to the defense"); *Columbus v. State*, 270 Ga. 658, 661-662 (2) (b) (513 SE2d 498) (1999) (trial counsel not ineffective in failing to call witness whose testimony would have been cumulative of other testimony); *Fleming v. State*, 324 Ga. App. 481, 488 (3) (b) (749 SE2d 54) (2013) ("[T]he failure to present cumulative evidence through additional witness testimony does not amount to ineffective assistance of counsel.") (citations omitted); see also *Hill v. State*, 290 Ga. App. 140, 147 (5) (j) (658 SE2d 863) (2008) (although trial counsel asserted at new trial hearing that his trial performance was deficient, ineffective assistance claim failed because defendant did not show that alleged deficiency prejudiced the defense).