306 Ga. 764
FINAL COPY

S19A0681. DAVIS v. THE STATE.

ELLINGTON, Justice.

A jury found Michael Earl Davis guilty of felony murder and other crimes arising out of a home invasion and the shooting death of Nicolas Jackson II.[1] On appeal, Davis contends that the trial court

---

[1] The victim was killed on February 2, 2012. On March 20, 2014, Davis was indicted for malice murder, four counts of felony murder (predicated on armed robbery, aggravated assault, burglary, and possession of a firearm by a first offender probationer), armed robbery, aggravated assault, burglary, possession of a firearm by a first offender probationer, and criminal gang activity. The count of criminal gang activity was later dismissed. The indictment charged Reco West with similar offenses, and Davis and West were tried together in May 2014, but during the course of those proceedings the trial court granted Davis's motion to sever his trial from that of West. See *West v. State*, 305 Ga. 467, 467 n.1 (826 SE2d 64) (2019). Davis was then tried individually on January 5 to 14, 2015. The jury found Davis not guilty of malice murder but guilty of the remaining counts. Davis was sentenced on February 4, 2015, to serve life in prison without parole on the count of felony murder predicated on aggravated assault and a consecutive 20-year term of confinement on the burglary count. In addition, Davis was sentenced to life in prison on the armed robbery count to be served concurrently with the felony murder sentence and to a five-year prison term on the count of possession of a firearm by a first offender probationer to be served concurrently with the burglary sentence. The three remaining felony murder counts were vacated by operation of law, and the aggravated assault merged with felony murder for purposes of sentencing. Davis filed a motion for new trial on February 5, 2015, and an amended motion for new trial on November 25, 2015. Following an April 22, 2016 hearing, the trial court denied the motion for a new trial on April

erred in striking a prospective juror over his objection. We affirm for the reasons set forth below.

Viewed in a light most favorable to the verdicts, the evidence shows the following. In August 2011, Kevell Ross asked his step-brother, Timothy Johnson, to "get some guys together" for the purpose of burglarizing the Jackson residence in Gwinnett County. Ross believed that there was valuable jewelry and at least $1 million in cash in the house.

Johnson contacted Darrez Chandler in September 2011, and they began to plan the crime. After an aborted attempt in December 2011, they assembled another crew and returned to the Jackson residence on February 2, 2012. On the way, they picked up "two younger guys," Reco West and Davis. According to Johnson, Davis got into the van with a gun, which he immediately began "clicking [and] getting . . . ready." When questioned by crew member Eddie

---

4, 2018. Davis's timely appeal was docketed in this Court to the April 2019 term and submitted for decision on the briefs.

Green, Davis and West acknowledged that they had been apprised of "what [was] up."

Johnson drove to the scene in a silver van carrying Jason Dozier, Anthony Lumpkin, Green, West, and Davis. Chandler remained in a nearby parking lot in his Pontiac with instructions to stay on the phone and let the others know if the police came. When the van arrived at the Jackson residence, Dozier, Lumpkin, West, and Davis, each carrying a handgun, exited and walked to the basement door. Johnson and Green remained in the van.

By this time, 15-year-old Nicolas Jackson and his older sister, Nikia Jackson, had returned home from school. When Lumpkin kicked the basement door open, the four men entered the house and Nicolas ran to his bedroom in the basement. Lumpkin and Dozier fired their weapons through the bedroom door. Nicolas suffered a fatal gunshot wound to his chest. The four intruders fled the Jackson home and returned to the van driven by Johnson. Dozier was carrying a laptop computer bag. Shortly after Johnson drove away,

Lumpkin announced to the others that the victim was "bucking" and that he "had to shoot" him.

When the intruders entered her home through the basement, Nikia was watching television in her room on the third floor. She heard what she thought was the sound of her brother bouncing a basketball and left her room to investigate. After walking downstairs into the living room, she looked outside and saw a silver van driving away. She called 911, and subsequently found Nicolas collapsed behind his bedroom door.

A City of Norcross police officer stopped the van shortly after the shooting. Lumpkin and West ran away on foot, but they were taken into custody a few minutes later, as were the four men who remained in the van. Police recovered four handguns from inside or near the vehicle. A laptop computer missing from the Jackson residence was in the van. Testing showed gunshot residue on the hands of Davis, Dozier, Lumpkin, and West. Gunshot residue was not found on either Johnson or Green.

At trial, Davis testified in his own defense. According to Davis, he got into the van because Green asked him to ride with him in order "to handle something." Davis maintained that he and Green rode together as matter of routine when Green, a drug dealer, went to collect money. Once they arrived at their destination, Davis said, he stayed in the van with Green and did not enter the house. Davis explained that he got gunshot residue on his hands when Dozier later tried to pass him a gun.

1. Davis does not challenge the sufficiency of the evidence. However, as is our custom in murder cases, we have reviewed the record to determine if the evidence was legally sufficient. We conclude that the evidence presented at trial, as summarized above, was sufficient to authorize the jury to find Davis guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). See also OCGA § 16-2-20 (defining party to a crime); *Navarrete v. State*, 283 Ga. 156, 158 (1) (656 SE2d 814) (2008) (a jury may infer common criminal intent from the defendant's presence,

5

companionship, and conduct with other perpetrators before, during, and after the offenses).

2. Davis contends that the trial court erred when it granted the State's motion to strike a prospective juror over his objection. Specifically, he contends the trial court improperly questioned the juror regarding a topic not covered in OCGA § 15-12-164 (a). He also contends that the trial court improperly excused the juror for cause based on the State's argument that she could not be fair and impartial.

The record shows that during questioning of the venire by the trial court, Juror 36 raised her card in an affirmative response when the trial court asked whether anyone had "something going on in your personal life that would prevent you from giving your full attention to this case if selected[.]" When Davis's attorney asked the venire if anyone had an economic or familial hardship, Juror 36 again gave an affirmative response.

During individual questioning, the prosecutor asked Juror 36 a series of questions about her family members who had been

arrested and charged with a crime. The prosecutor did not ask Juror 36 about her hardship and Davis's counsel declined to question the juror. The trial court, however, asked Juror 36 to describe the nature of her hardship. Juror 36 explained that, the day before, her brother had died in Mississippi from throat cancer. She said that she believed that the funeral would occur that weekend, although she had not "talked to anyone today because [she had] been here."

The State subsequently moved to strike Juror 36 on "two bases." First, the prosecutor pointed to the "late-described hardship" and the funeral arrangements for her brother that would take Juror 36 out of the state. Secondly, the prosecutor asked that Juror 36 be struck for cause in that she could not be a fair and impartial juror. The prosecutor argued that the juror had described her family members as having been "unfairly handled by the system," that she had maintained that she had not been treated appropriately by law enforcement, and that her body language and responses indicated a hostility to law enforcement.

In its ruling, the trial court announced that it would "grant this challenge primarily as a hardship based on the very recent death, within the last 24 hours, of one of [Juror 36's] relatives that will require her to go to Mississippi." The trial court said that it was granting "the first part of the State's request," and then characterized the grant "as a hardship excusal by the Court itself." In its order denying Davis's motion for new trial, the trial court explained that "the Court excused [Juror 36] based on her hardship situation, taking the juror at her word on her problems concentrating on the case."

Davis complains that the trial court's questioning of Juror 36 did not pertain to the topics covered in OCGA § 15-12-164 (a),[2] but

---

[2] OCGA § 15-12-164 (a) provides:
On voir dire examination in a felony trial, the jurors shall be asked the following questions:
   (1) "Have you, for any reason, formed and expressed any opinion in regard to the guilt or innocence of the accused?" If the juror answers in the negative, the question in paragraph (2) of this subsection shall be propounded to him;
   (2) "Have you any prejudice or bias resting on your mind either for or against the accused?" If the juror answers in the negative, the question in paragraph (3) of this subsection shall be propounded to him;

8

to the juror's claim that she had a death in the family. Davis's reliance on OCGA § 15-12-164 is inapposite. That statute enumerates questions that must be asked of prospective jurors; it does not limit the trial court's inquiry to those issues. See *Morrow v. State*, 272 Ga. 691, 698 (6) (532 SE2d 78) (2000) (the scope of voir dire is left to the trial court's discretion); *Croft v. State*, 73 Ga. App. 318, 319 (1) (36 SE2d 200) (1945) (predecessor to OCGA § 15-12-164 did not "exclude by its language all other questions not mentioned therein which may be asked the juror when put on the voir dire").

Davis argues that "it is evident" that the State's motion to strike Juror 36 was based not on hardship but on her bias against law enforcement. Davis contends that, in fact, Juror 36 was not

---

(3) "Is your mind perfectly impartial between the state and the accused?" If the juror answers this question in the affirmative, he shall be adjudged and held to be a competent juror in all cases where the authorized penalty for the offense does not involve the life of the accused; but when it does involve the life of the accused, the question in paragraph (4) of this subsection shall also be put to him;
(4) "Are you conscientiously opposed to capital punishment?" If the juror answers this question in the negative, he shall be held to be a competent juror.

biased in that she had testified during her individual questioning that she could be fair and impartial to both Davis and the State. However, the State's motion to remove the juror was based in part on the juror's hardship and in part on the juror's alleged inability to be fair and impartial. The trial court then excused Juror 36 on the basis of hardship. "It is well-settled that a trial court may excuse a potential juror for 'good cause' if jury service would impose an undue hardship. OCGA § 15-12-1 (a)." *Stewart v. State*, 277 Ga. 768, 769-770 (3) (596 SE2d 143) (2004) (citation and punctuation omitted) (trial court properly exercised its discretion in excusing a juror who represented that she was too distressed about her mother's recent death to serve on a murder case). See also *Walker v. Hagins*, 290 Ga. 512, 514 (722 SE2d 725) (2012) ("whether to excuse a juror for hardship lies within the trial court's discretion") (citation and punctuation omitted). Accordingly, there was no error.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 9, 2019.

Murder. Gwinnett Superior Court. Before Judge T. Davis.

*Juwayn Haddad*, for appellant.

*Daniel J. Porter, District Attorney, Jon W. Setzer, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew D. O'Brien, Assistant Attorney General*, for appellee.