**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**November 14, 2019**

# In the Court of Appeals of Georgia

A19A2108. HUDSON v. THE STATE.

MERCIER, Judge.

Following a bench trial, Robert Lee Hudson was convicted of aggravated sexual battery, statutory rape, and aggravated child molestation. He appeals, arguing that the trial court erred in denying his motion to suppress. We affirm.

Viewed favorably to the verdict, the evidence shows the following. See *Blackwell v. State*, 337 Ga. App. 173, 174 (786 SE2d 552) (2016). On November 30, 2015, the mother of 13-year-old D. M. reported to police that she had discovered sexually explicit social media messages exchanged between D. M. and Hudson. The police interviewed D. M., who stated that she and Hudson had met online, corresponded via social media, and engaged in both sexual intercourse and oral sex

on several occasions at her home. D. M. picked Hudson's picture out of a photographic lineup and identified him as the man with whom she had sex.

After interviewing D. M. and reviewing the sexually explicit messages, the investigating officers went to the apartment complex where Hudson possibly lived and saw him walking toward an apartment that had been leased by his wife. They lost sight of Hudson and, believing that he had entered the apartment, knocked on the front door. No one responded. Instead, the officers spotted Hudson running behind the apartment building. They apprehended him after a short chase, arrested him, placed him in a patrol car, and read him his rights pursuant to *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

After receiving his *Miranda* warnings, Hudson made several statements to police. He initially denied any inappropriate conduct and asserted that he did not know D. M. The following conversation then occurred:

> Officer: Maybe you just didn't know [D. M.] was young. Maybe she told you a lie, told you she was a different age. If that's what happened you just need to tell me that, so I know. But to tell me that you don't know her and you was never there, and I know that's a lie, then that's not helping.

2

Hudson: Ain't gonna help me neither sir if I go to jail. If I tell you I messed with her like, I'm admitting the guilt.

Officer: At least then I could tell them you cooperated instead of lying to me. Then denying it and them proving that you denied it and lied. They [will] throw the book at you.

After that exchange, Hudson admitted that he and D. M. had engaged in sexual intercourse and oral sex and that he had placed his fingers inside her vagina. He insisted, however, that D. M. had told him she was 20 years old.

Prior to trial, Hudson moved to suppress his statements to police. The trial court granted the motion in part, excluding any custodial statements Hudson made before he was advised of his *Miranda* rights, but denied the motion as to relevant statements made after he received the *Miranda* warnings. The case proceeded to a bench trial on stipulated evidence, and the trial court found Hudson guilty of aggravated sexual battery, statutory rape, and aggravated child molestation. Hudson filed a motion for new trial, which the trial court denied, and this appeal followed.

1. Asserting that his "confession was the product of a threat," Hudson argues that the trial court erred in refusing to suppress the incriminating statements. Before admitting evidence of a confession, a "trial court must consider the totality of the

circumstances and assess whether the defendant made the statement voluntarily." *Blackwell*, supra at 175 (1); see also OCGA § 24-8-824 ("To make a confession admissible, it shall have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury."). We will not reverse a trial court's determination as to voluntariness absent clear error. See *Blackwell*, supra.

Hudson argued below that the police coerced his confession by "saying they would throw the book at [him] if [he didn't] confess[.]" The trial court rejected this claim, finding the officer's statement to be "akin to a mere 'truism' or recounting of fact rather than a threat of injury that would render the statement involuntary."

We agree. "There is a material difference between a statement to a [suspect] that it would be better for him to tell the truth, and one wherein he is told that it would be better for him to make a confession." *Rogers v. State*, 142 Ga. App. 387, 388 (2) (236 SE2d 134) (1977) (citations, punctuation, and emphasis omitted). Mere "exhortations that [an accused] should tell the truth" do not render a confession involuntary because "no hope of benefit springs from such an admonishment." *Morales v. State*, 337 Ga. App. 614, 617 (2) (b) (788 SE2d 535) (2016) (citation and punctuation omitted).

Undoubtedly, the officer in this case admonished Hudson not to lie. But the officer did not tell Hudson that he would be better off if he confessed, offer Hudson any benefit in exchange for the confession, or threaten injury if Hudson refused to cooperate with the police. And "[t]elling a suspect that truthful cooperation might be considered by others does not render a statement involuntary[.]" *Rogers v. State*, 289 Ga. 675, 679 (3) (715 SE2d 68) (2011). Moreover, the officer's statements "did not involve physical or mental torture, the hallmark of inducement by a fear of injury." *Smith v. State*, 295 Ga. 283, 287 (1) (b) (i) (759 SE2d 520) (2014). He merely warned Hudson of the consequences of lying to the police.

The totality of these circumstances authorized the trial court to conclude that Hudson confessed voluntarily. We find no error, therefore, in the trial court's refusal to suppress the incriminating statements on voluntariness grounds. See *Dozier v. State*, 306 Ga. 29, 37 (4) (c) (829 SE2d 131) (2019) (officer's statement to defendant that he would arrest defendant's wife if she lied about defendant's whereabouts was a "mere truism" and did not render defendant's subsequent confession involuntary); *Smith*, supra (officer's statement to defendant that defendant's sister "might be subject to arrest for lying to police about an item taken in a robbery is a 'mere truism'"); *Blackwell*, supra at 176 (1) ("[A] statement by police that makes the

5

defendant aware of potential legal consequences is in the nature of a mere truism that does not constitute a threat of injury or promise of benefit[.]") (citation and punctuation omitted).

2. Hudson further argues that his arrest was illegal because the arresting officers did not have an arrest warrant or probable cause to believe that he had committed a crime. He thus claims that his incriminating statements, which in his view were "discovered as a result of the unlawful arrest," should have been suppressed. This claim has no merit.

Hudson did not challenge the validity of his arrest below or raise this specific argument in his motion to suppress or at the suppression hearing. Our analysis of the claim, therefore, is limited to a review for "plain error affecting substantial rights." *State v. Herrera-Bustamante*, 304 Ga. 259, 263 (2) (b) (818 SE2d 552) (2018) (citation and punctuation omitted); see also OCGA § 24-1-103 (d). To establish plain error, Hudson must

> point to an error that was not affirmatively waived, [that was] clear and not open to reasonable dispute, [that] affected his substantial rights, and [that] seriously affected the fairness, integrity or public reputation of judicial proceedings.

Id. (citation and punctuation omitted).

6

Hudson cannot meet these requirements. As an initial matter, he stipulated below to the admissibility of his statements to police, asserting at the beginning of the bench trial that he only wished "to preserve the issue of the confession, the voluntariness," and otherwise had "no objection" to the evidence. Hudson, therefore, affirmatively waived any argument that the confession was inadmissible as the fruit of an unlawful arrest. See *Adams v. State*, 306 Ga. 1, 3 (1) (829 SE2d 126) (2019) (defendant affirmatively waived alleged error relating to admission of evidence by stating that he did not object to the evidence and that it had been properly admitted).

Furthermore, the officers arrested Hudson *after* 13-year-old D. M. identified him as the man who engaged in sexual intercourse and oral sex with her. As noted by our Supreme Court,

> [a] warrantless arrest is constitutionally valid if at the time of the arrest the arresting officer has probable cause to believe the accused has committed or is committing an offense. Probable cause exists if the arresting officer has knowledge and reasonably trustworthy information about facts and circumstances sufficient for a prudent person to believe the accused has committed an offense.

*Devega v. State*, 286 Ga. 448, 451 (4) (b) (689 SE2d 293) (2010) (citation and punctuation omitted).

7

Given the evidence available to the officers before Hudson's arrest, including the information provided by D. M., her photo identification of Hudson, and printouts of Hudson's sexually explicit messages to her , the officers had probable cause to believe that Hudson had committed a criminal offense. See, e.g., OCGA § 16-6-3 (a) (defining statutory rape); OCGA § 16-6-4 (c) (defining aggravated child molestation). Although Hudson now argues that the officers did not know who he was when they arrested him, the evidence shows otherwise. Before the police knocked on the door to the apartment where they believed Hudson lived, they saw him walking toward the apartment, and one officer recognized him. The audio recording of Hudson's arrest further reveals that when the officers apprehended him, he asked them who they wanted. One officer responded, "Robert Lee Hudson, you."

The officers knew who Hudson was and, at the time of the arrest, had probable cause to believe that he had committed a criminal offense involving D. M. Accordingly, Hudson's incriminating statements were not subject to suppression as the fruit of an unlawful arrest. See *Devega*, supra ("[E]ven if we assume that the warrantless arrest in this case was illegal . . . , suppression of the fruits of that arrest is not required because the arrest was made with sufficient probable cause and in an office, rather than in the sanctity of the home."); *Parker v. State*, 326 Ga. App. 175,

8

179 (3) (754 SE2d 409) (2014) (reasonable suspicion that defendant had committed a crime developed into probable cause to arrest when co-defendants positively identified defendant as a participant in the armed robbery); see also *State v. McCloud*, 344 Ga. App. 595, 598 (810 SE2d 668) (2018) ("[T]he standard of probable cause is an objective one[.]") (punctuation omitted).

*Judgment affirmed. Barnes, P. J., and Brown, J., concur*.